C. O. LEE, Appellant, v. JOHN P. KIRBY et al., Appellees.

**LIBEL AND SLANDER:** Justification—Adequate Defense. It is a
1 complete defense to an alleged libel that the publication (1) was true, (2) was nonmalicious, and (3) was with good motives and for justifiable ends. So held as to the posting of a ''bond slacker.''

**EVIDENCE:** Opinion Evidence—Ability to Subscribe for War Bonds.
2 On the issue, in an action for libel, whether plaintiff had subscribed for war bonds in an amount fairly in keeping with his financial means, as compared with other citizens of the township, competent witnesses may be permitted to give their opinion as to the comparative worth and ability to subscribe of the citizens of the township, when it appears that it is impracticable to lay before the jury all the numerous and involved data upon which the opinion is based.

*Appeal from Emmet District Court.—*James De Land, Judge.

FEBRUARY 13, 1923.

PLAINTIFF sued to recover $20,000 actual and exemplary damages for libel. The opinion states the case. Trial to a jury. Verdict and judgment for defendants. A number of special interrogatories were also propounded to and answered by the jury. Plaintiff appeals.—*Affirmed.*

*J. G. Myerly,* for appellant.

*E. A.* and *W. H. Morling, F. J. Kennedy, Heald & Cook, B. M. Coon, W. A. Ladd,* and *Healy & Breen,* for appellees.

PER CURIAM.—1. Prior to the armistice, plaintiff, his brother, and three others, were posted by the Emmet County bureau of military affairs, as bond slackers. The posting was

1. LIBEL AND SLANDER: justification: adequate defense.

on a bill board erected in the public park in Estherville. No other epithets or characterization were applied to plaintiff. Defendants are members of the above named board.

The petition alleges in great detail the fact that the World War was then in progress; the necessity of raising money to support the government; the efforts of different patriotic organizations to assist the government; the intense interest of the people; their desire to know who were and who were not performing their full duty; and so on. It also alleges that the term "bond slacker" was understood by all to apply to one who had refused to purchase bonds or subscribe for his full quota according to his financial means and ability, as compared with other citizens; that the term "bond slacker," as used by defendants, as before stated, was libelous.

Defendants likewise answered in great detail, setting out all the conditions existing at that time. In a division of the answer, they admit, in substantially the language of the petition, that the great war was raging, and had been for eighteen months; that the government had incurred unprecedented expense in raising an army and sending millions of soldiers to Europe;

that the government had solicited all loyal citizens to invest in Liberty Bonds. The answer admits that the term "bond slacker" was generally understood to apply to one who had refused to purchase government bonds, or his full and fair proportion thereof; admits the posting of the plaintiff's name on the board. They deny plaintiff's allegation that he had subscribed for and bought of each issue of bonds his just and equitable quota, and allege that he had subscribed a smaller amount than that allotted to him of the different loans, and of the fourth loan had subscribed for but $250, whereas the amount allotted to him was $400.

Prior to the time when plaintiff was asked to subscribe to the bonds of the fourth loan, there had been organized in Emmet County a society under the name of Emmet County War Association, of which defendants, with others, were the directing officers or board; and plaintiff was a member of said association, having signed a written card associating himself as such member, or of a branch thereof in his township. The answer further alleges that the county war board, in good faith, without malice or ill will, adopted as one of the rules of the association the following:

"That the names of all persons refusing to take their allotment of Liberty Bonds of the Fourth Liberty Loan, after hearing and adjustment by the committees, be furnished each Emmet County newspaper for publication, and be placed upon a bulletin board in the public square."

The term "bond slacker" appears to have been an abbreviation of that regulation. The answer further alleges that thereafter plaintiff refused to take his allotment; that plaintiff had accumulated $10,000 in money and other property, and was concealing his property from the assessor and war committees; that plaintiff was in fact a bond slacker; and that he sustained no damages.

In addition to the general verdict, the following interrogatories were propounded to the jury, and were answered:

"1. Was the plaintiff, when his name was posted upon the sign board, as set out in the petition, in truth and in fact a bond slacker, and was such posting with good motives and for justifiable ends? Answer. Yes.

''2. Were the defendants, when they caused the plaintiff's name to be posted upon the sign board, as referred to in the petition, acting in good faith, with the reasonable belief that the plaintiff was then and there a bond slacker, without intention to injure or humiliate him, and without malice, in the bona-fide discharge of a public duty and in the interest of the public and in the interest of the effective prosecution of the war? Answer. Yes.

''3. Did the posting of the plaintiff's name upon the bill board, as set forth in the petition, result in any injury to his name, reputation, or character, or cause him pain or mental suffering? Answer. No.''

The second finding was doubtless predicated upon the undisputed fact that the committee acted only in pursuance of its regulation, adopted and published in advance of any negotiations with plaintiff, and without any personal reference to him. Defendants testify that they had no malice or ill will towards the plaintiff. On the theory upon which the case is tried, the verdict has abundant support in the testimony. This subject will be mentioned again in a moment. The evidence is somewhat voluminous, and was directed very largely to the financial worth of the plaintiff and of numerous other people in the county and his neighborhood, and the comparison of the worth of the different ones with their allotment. We deem it unnecessary to discuss the evidence in detail.

About 70 errors are assigned, and 45 brief points. Some of these are without merit, others are not argued, and as to others the rules are not complied with. Under the circumstances, and in view of the conclusion we have reached, we deem it unnecessary to separately discuss the numerous points. To do so would unduly extend the opinion. Some members of the court are of opinion that no libel was disclosed, either by pleading or by evidence, and that, if defendants had published the fact that plaintiff refused to take the full amount of bonds allotted to him, it could not be deemed a libel; that all that is disclosed is a species of duress; and that if, by means of posting, defendants had compelled plaintiff to subscribe for the full amount, it may be that he could have recovered it from them, on the ground that they had obtained it by duress. They did not

succeed in getting the full amount, so that plaintiff was not harmed thereby, unless their action also amounted to a libel. But the parties treated the matter as such, and tried the case on the mutual theory that a libel was charged, and the defendants defended it as such. They pleaded the truth in justification, and, as said, pleaded good faith and want of malice. The issue really tried out was the truth of the assertion that the plaintiff was a bond slacker, because he had failed to subscribe for the amount allotted to him, which, it was alleged, was a proper allotment, considering the financial standing of plaintiff, and comparing it with the financial standing of others. Since both parties tried the case on the theory of libel, we are content to let them have their way about it; and, as said, on that theory the verdict is supported by the evidence. Because the issue was fictitious, we think we should, as before stated, decide the case here without a detailed discussion of the numerous propositions argued. Nor is it necessary to definitely pass upon the question as to whether the posting was libelous. In fact, some members of the court do not assent to the proposition that what was done is libelous, but think that, even though it might be said that the evidence would sustain a verdict for plaintiff, the jury could properly find that the presumption of some damage, which usually obtains, was rebutted or overcome; and that, therefore, in such a case the plaintiff could recover nominal damages only; and that the failure of the jury to assess nominal damages is not reversible error. We have held that, with possibly some exceptions, not applicable to this case, a reversal will not be had for the assessment of nominal damages. *Gustafson v. Cedar Rapids & M. C. R. Co.,* 148 Iowa 388. There is some question as to whether the matter of privilege has been appropriately pleaded; but in any event, in view of the verdict, finding complete justification because of the truth of the publication, the question of privilege is not now material.

2. A few of the assignments are in reference to rulings on objections to evidence. The more important will be noticed. Plaintiff was asked on cross-examination whether he did not, in

2. EVIDENCE:
opinion evi-
dence: ability
to subscribe
for war bonds.

1918, when the township assessor called upon him, tell the assessor and return the assessment, that he had no moneys and credits. The same matter was referred to as to the year 1919. The objections were not sufficiently specific. There is nothing in the objection to suggest that the evidence called for specific acts, as now argued. *Miller v. Davis*, 193 Iowa 611. Defendants offered the assessor's books in evidence. The evidence as to the assessor's books and what was shown thereby had already been received, and was in the record without proper objection. Admission of the books showing the same facts, if erroneous, would be nonprejudicial.

Another group of appellant's assignments has reference to evidence introduced of the members of the township committees and others, as to the worth of different individuals, and the comparative worth and ability to subscribe, of the citizens of the township. This was the theory of the trial. It was appellant's contention that such opinions were inadmissible, because calling for the conclusion of the witnesses. This matter involved complex questions, where the evidence shows that thousands of items and things came up during the making of the apportionments. To go into detail as to all the circumstances of each one of perhaps hundreds of property owners, and attempt to place all such matters before the jury, would have been impracticable. Though the evidence did partake somewhat of the nature of a conclusion, we think it was competent. This is so in many instances. *Moyers v. Fogarty*, 140 Iowa 701, 712. In regard to complex or collective facts, the statement may still remain one substantially of fact. 22 Corpus Juris 531. *Campbell v. Park*, 128 Iowa 181. It has been held that, where the originals consist of numerous documents which cannot be conveniently examined in court, and the fact to be proved is the general result of an examination of the whole collection, evidence may be given as to such result by any person who has examined the documents, and who is skilled in such matters, if the result is capable of being ascertained by calculation. This has been permitted when another course would cause loss of time and tend to confuse the jury. Competent witnesses have been allowed to summarize the accounts and state conclusions as to balances and the like. *State*

*v. Brady,* 100 Iowa 191, 199 (36 L. R. A. 693); 2 Jones's Blue Book of Evidence 211. We reach the conclusion that there is no prejudicial error. The judgment is, therefore,—*Affirmed.*

All the justices concur, except FAVILLE, J., who, having been of counsel, takes no part.

WEAVER, J. (specially concurring). I concur in the conclusion to affirm, solely on the ground suggested by the majority, that, conceding the libelous character of the act of which plaintiff complains, it was still competent for the jury to find that the presumption of actual or special damages therefrom had been overcome. This finding would, of course, sustain a verdict in plaintiff's favor for nominal damages, had one been returned; but it is well settled that failure to assess damages of a purely nominal character is ordinarily not sufficient ground for reversal on appeal. I desire to add, however, that, in my judgment, the petition sufficiently charges a libel *per se,* and that the assumption of authority by defendants to assess or fix the amount of plaintiff's subscription to Liberty Bonds or other contributions for alleged patriotic purposes, and to impose penalties upon him for failure to comply with their demands, was wholly unauthorized, and that such being the case, the plea or pretense of privilege or justification is entitled to no consideration by court or jury; but for reasons unnecessary to discuss, applicable to this class of cases generally, it is quite improbable that a new trial could result in anything more than a recovery of nominal damages. For the reasons suggested, I concur in the affirmance of the judgment in the court below.