Turner, J.
 

 The Municipal Court of Cincinnati has jurisdiction in actions for the replevin of personal property. Section 1558-6(1) and Section 1558-6a(e), General Code. In the actions and proceedings of which the Municipal Court has jurisdiction, all laws conferring jurisdiction upon a Court of Common Pleas, a police court, or a justice of the peace, giving such court or officer power to hear and determine such causes, extend to the Municipal Court of Cincinnati. Section 1558-9, General Code.
 

 When the appraised value of the property replevied exceeds $300, it is the duty of a justice of the peace to certify the proceedings in the case to the Common Pleas Court. As the value of the property here involved is more than $300, it will be assumed that the proceedings below were under Section 12051
 
 et seq.,
 
 General Code, rather than under Section 10462
 
 et seq.,
 
 General Code, and reference hereinafter will be made accordingly.
 

 Section 12051, General Code, provides: “The possession of specific personal property may be recovered in an action as provided in this chapter.” The chapter
 
 *510
 
 referred to is Chapter 6, Division VII, Title IV, Part Third, under the classification of “Special Actions.” However, such action is subject to the same general rules as in other civil actions. 35 Ohio Jurisprudence, 431.
 

 As stated in 35 Ohio Jurisprudence, 432: “It has been declared that the action of replevin, as regulated by statute in Ohio, differs essentially from the English action of replevin qnd that of most of the sister states, and that but little light could be cast upon the question by reference to the decisions of other states, based, as they are, upon statutory provisions and rules of practice materially variant from those of Ohio.”
 

 Section 12052, General Code, provides that an order for the delivery of property to the plaintiff shall issue when there is filed in the office of the clerk of the court an affidavit on behalf of plaintiff describing the property claimed and showing that the plaintiff is the owner of the property or has an interest therein. If the ownership or interest is special or partial the facts shall be stated. Such affidavit shall also show that the property is wrongfully detained by the defendant.
 

 Under'Section 12069, General Code, it is the duty of the jury, or in case a. jury be waived or not demanded, the court, to find whether the plaintiff had the right of property or the right of possession only, at the commencement of the suit.
 

 The plaintiff cannot prevail unless he has proved by a preponderance of the evidence either his right of property or right of possession at the commencement of the suit.
 

 It is well settled that an action in replevin will lie on behalf of a chattel mortgagee or his assignee, who is entitled to possession of the property. See Ohio authorities cited in note, 35 Ohio Jurisprudence, 454.
 

 , However, a fraudulent chattel mortgage, or a chattel mortgage given by one not the owner of the chattel, even though executed and deposited with the county
 
 *511
 
 recorder pursuant to Section 8560
 
 et seq.,
 
 General Code, will not entitle a holder with knowledge of the fraud, or a holder of a mortgage .signed by one not the owner, to maintain an action in replevin against an innocent purchaser for value.
 

 While the evidence disclosed by the bill of exceptions is sketchy and interspersed with many objections and much argument, it does show the following: That, appellant, doing business under the trade name of Cincinnati Finance Company, had been buying chattel mortgages on automobiles sold by the partnership doing business under the name of Northside Auto Sales; that the printed chattel mortgage form used in this case was one evidently prepared and printed by appellant and bears on its face a printed assignment to Cincinnati Finance Company; that this printed assignment form requires the signature of the dealer countersigned by the owner, partner, or officer of the dealer; that the assignment of this .mortgage was executed by “Northside Auto Sales, by George Munday,” and under Munday’s signature appear the words “ (Signature of owner, partner, or officer)”; that prominently printed on this mortgage form in capital letters is the following, “Bill of sale must be filed before this mortgage”; that the jurat on the chattel mortgage also showed Munday to be a member of Northside Auto Sales partnership, mortgagee; that the manager of appellant and appellant’s checkers had visited the place of business of Northside Auto Sales and checked this particular automobile, which was to be used as a demonstrator; that Northside Auto Sales had purchased this automobile from the Chrysler distributor a few days before the execution of the mortgage; that title at no time was ever in the name of George Munday; and that no bill of sale had ever been issued to Munday or anyone else for this automobile. The evidence does not show the date of payment to the distributor.
 

 In answer to the question on cross-examination,
 
 *512
 
 “Now at the time you made this loan on this automobile, you made that loan to the Northside Auto Sales, did you not?” appellant’s manager answered: “I can’t say, it is possible the check was made direct to the distributor. ’ ’
 

 This manager further testified on cross-examination:
 

 “Q. And you didn’t take the trouble to find out if he had a title, did you? A. I was not here at that time. * # ^
 

 ‘ ‘
 
 Q. Who was the man that took care of that transaction, is he here now? A. He is out of town. - C. H. Stevenson was the manager at that time.
 

 “Q. But you have never seen a bill of sale of George Munday at any time? A. No, sir.
 

 “Q. And so far as you know this loan was made without a bill of sale ever having been issued to George Munday? A. I can’t answer that, I don’t know.”
 

 A deputy clerk of courts testified that no bill of sale to George Munday had been filed.
 

 Under the provisions in the General Code governing the disposition or acquisition of a motor vehicle, in éffect at the date of this mortgage, it was unlawful to sell, convey, give away, transfer, exchange, receive, purchase or obtain any motor vehicle or used motor vehicle within this state, except in the manner and subject to the conditions provided in Section 6310-3
 
 et seq.,
 
 General Code, then in force.
 

 We are not unmindful of the holding of this court in the fourth paragraph of the syllabus in the case of
 
 Commercial Credit Co.
 
 v.
 
 Schreyer,
 
 120 Ohio St., 568, 166 N. E., 808, 63 A. L. R., 674, as follows: “A note secured by a chattel mortgage upon a motor vehicle in the possession of the mortgagor at the time of the execution of the mortgage, though the mortgagor had at the time no bill of sale therefor executed in compliance with Sections 6310-3 to 6310-14, General Code, is nevertheless a valid mortgage between the parties, and, if and when said mortgage is filed with the county re
 
 *513
 
 corder of‘the county where the mortgagor resides, it has priority over subsequent purchasers and mortgagees in good faith.
 
 (Ohio Farmers’ Ins. Co.
 
 v.
 
 Todino,
 
 111 Ohio St., 274, and
 
 Helwig
 
 v.
 
 Warren State Bank,
 
 115 Ohio St., 182, overruled.)”
 

 That case is not authority here for the reason that there is no evidence which shows that the automobile ever stood in the name of the mortgagor or that it ever left the possession of the partnership prior to the sale and delivery to appellee TJsinger. On the contrary, the evidence is clear that at the time of the execution of the mortgage in question, the motor vehicle was in the possession and ownership of the partnership, Northside Auto Sales. It is not necessary here to go into the question of whether a partner has the right to give a chattel mortgage on partnership property. Even though such mortgage might be good against the partnership property where no rights of third parties have intervened, yet it cannot be said that such a chattel mortgage when duly filed with the county recorder is constructive notice to anyone.
 

 The reasonable deduction from the evidence in this case and the state of the law existing at the time of the execution of the chattel mortgage, is that Northside Auto Sales, a Chrysler retail dealer, wanted to purchase a Chrysler sedan as a demonstrator, and desired to borrow the necessary capital from appellant; while appellant was willing to loan the necessary capital it wanted to avoid the effect of the holdings of the courts in respect of “floor-plan” chattel mortgages.
 

 Appellant’s own records, in addition to the assignment and jurat on the mortgage itself, show that it knew the mortgagor was a member of the mortgagee partnership. The lack of a bill of sale to Munday, as required not only by law but by the notice on appellant’s own chattel mortgage form, as well as the lack of any showing of the payment of the state sales or use tax, is also persuasive.
 

 
 *514
 
 The filing of the chattel mortgage from Munday to Northside Anto Sales was not constructive notice of a lien on an automobile owned by Northside Auto Sales, for which no bill of sale was ever executed or filed. Nor was the assignment of that mortgage to Cincinnati Finance Company constructive notice of its ownership by Automobile Finance Company, appellant herein.
 

 An examination of the registrar’s index kept pursuant to Section 6299, General Code, in effect at the date of this mortgage, would not have disclosed Mun-day’s name as the owner of this automobile. If Section 6301, General Code, in effect at the same time, had been complied with, this automobile would have appeared in the name of Northside Auto Sales, dealer.
 

 It is not necessary to pass on the question whether this chattel mortgage might be good between appellant and the partnership — the question here being: Is it good against an innocent purchaser for value — one who has paid full value and had no notice actual or constructive of the interest of any other person than his immediate assignor?
 

 The appellant claims that appellee Usinger never acquired ownership, for the reason that he is not in possession of a certificate of title issued under the certificate of title law, Section 6290-2
 
 et seq.,
 
 General Code, in effect at the time appellee Usinger purchased the automobile.
 

 Section 6290-2, General Code, provides: “No manufacturer, importer, dealer or other person hereafter shall sell or otherwise dispose of a new motor vehicle to a dealer to be used by such dealer for purposes of display and resale without delivering to such dealer a manufacturer’s or importer’s certificate duly executed in accordance with the provisions of this chapter and with such assignments thereon as may be necessary to show title in the purchaser thereof; nor shall such dealer purchase or acquire a new motor vehicle without
 
 *515
 
 obtaining from tbe seller thereof such manufacturer’s or importer’s certificate.’'’
 

 Section 6290-3, General Code, provides: “No person except as provided in the preceding section hereafter shall sell or otherwise-dispose of a motor vehicle without delivery [delivering] to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser, nor purchase or otherwise acquire a motor vehicle unless he shall obtain a certificate of title for the same in his name in accordance with the provisions of this chapter. ’ ’
 

 Section 6290-4, General Code, provides: “No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer’s or importer’s certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer’s or importer’s certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recpgnize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of,' or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer’s or importer’s certificate duly issued, in accordance with the provisions of this chapter.”
 

 Section 6290-5, General Code, provides: “Application for a certificate of title shall be made.upon a form hereinafter prescribed by this chapter; and shall be sworn to before a notary public or other officer empowered to- administer oaths; and shall be filed with the clerk of courts of the county in which the applicant resides if the applicant be a resident of this state or if
 
 *516
 
 not such reside'nt, in the county in which the transaction is consummated; and shall be accompanied by the fee prescribed in this chapter; and if a certificate of title has previously been issued for such motor vehicle in this state, shall be accompanied by said certificate of title duly assigned, unless otherwise provided for in this chapter. If a certificate of title has not previously been issued for such motor vehicle in this state said application, unless otherwise provided for in this chapter, shall be accompanied by a manufacturer’s or importer’s certificate as provided for in this chapter;
 
 or by a proper bill of sale or sworn statement of ownership, the originals of which have been duly filed with the clerh of courts, or a duly certified copy thereof;
 
 or by a certificate of title, bill of sale or other evidence of ownership required by the law of another state from which such motor vehicle was brought into this state. The clerk of courts shall retain the evidence of title presented by the applicant and on which the certificate of title is issued. The clerk of courts shall use reasonable diligence in ascertaining whether or not the facts in said application are true by checking the application and documents accompanying same with the records of motor vehicles in his office; and if satisfied that the applicant is the owner of such motor vehicle and that the application is in the proper form, the clerk • of courts shall issue a certificate of title over his signature' and sealed with his seal, but not otherwise.
 

 “In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser and in all other cases such certificate shall be obtained by the purchaser. In all cases of transfers of motor vehicles, the application for certificate of title shall be filed within three days after the delivery of such motor vehicle.
 

 1 ‘
 
 The clerk of courts, except- as hereinafter provided,
 
 *517
 
 shall refuse to accept for filing any application for certificate of title and shall refuse to issue certificate of title, when the motor vehicle was transferred in the state of Ohio after the effective date of this act, unless prepaid tax receipts required by Section 5546-3 of the General Code are presented with the application in the manner and form to be prescribed by the Tax Commission. * * *
 

 “In the following cases the clerk of courts shall accept for filing such application and shall issue certificate of title without requiring payment or evidence of payment of either tax: * * *
 

 “ (3) When the transaction in this state is not a retail sale as defined by Section 5546-1 of the General Code. * * *” (Italics ours.)
 

 Section 6290-9, General Code, provides: “The provisions of Sections 8560 to 8572, inclusive, of the General Code, shall never be construed to apply to or to permit or require the deposit, filing or other record whatsoever of a chattel mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument, or any copy of same, made hereafter and covering a motor vehicle. Any mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument made hereafter and covering a motor vehicle, if such instrument is accompanied by delivery of said manufacturer’s or importer’s certificate and followed by actual and continued possession of same by the holder of said instrument, or in the case of a certificate of title if a notation of same has been made by the clerk of courts on the face thereof, shall be valid as against the creditors of the mortgagor whether armed with process or not, and subsequent purchasers, mortgagees and other lien holders or claimants but otherwise shall not be valid against them. All liens, mortgages and encumbrances noted upon a certificate of title shall take priority according to the
 
 *518
 
 order of time in which, the same are noted thereon by the clerk of courts. Exposure for sale of any automobile or motor vehicle by the owner thereof, with the knowledge or with the knowledge and consent of the holder of any lien, mortgage or encumbrance thereon, shall not render the same void or ineffective as against the creditors of such owner, or holders of subsequent liens, mortgages or encumbrances upon such motor vehicle.
 

 “The holder of a chattel mortgage, trust receipt, conditional sales contract or similar instrument, upon presentation of said instrument to the clerk of courts of the county where such certificate of title was issued, together with the certificate of title and the fee prescribed by his [this] chapter, may have a notation of such lien made on the face of such certificate of title. The clerk of courts shall enter said notation and the date thereof over his signature and seal of office, and he shall also note such lien and the date thereof on the duplicate of same in his files and on that day shall* notify the registrar who shall do likewise.
 
 The clerk of courts shall also indicate by appropriate notation on such instrument itself the fact that such lien has been noted on the certificate of title.
 
 * * *
 

 “The provisions of Sections 8560 to 8572, inclusive, of the General Code shall continue to apply to the deposit, filing, refiling, or other record whatsoever of a chattel mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument, or any copy of same, made prior to the effective date of this act and covering a motor vehicle.”
 
 (Italics ours.)
 

 It will be noted that in case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title
 
 shall be obtained in the name of the purchaser by the dealer
 
 upon application signed by the purchaser, and that the application for the certificate
 
 *519
 
 of title shall be filed within three days
 
 after the delivery of such motor vehicle.
 

 In the case of
 
 State, ex rel. City Loan & Savings Co.,
 
 v.
 
 Taggart, Recorder,
 
 134 Ohio St., 374, 17 N. E. (2d), 758, which upheld the constitutionality of the Certificate of Title Law, it is said: “As to the contention that the citizens of Ohio and relator in particular are deprived of their property without due process of law, the respondent points out that it must be assumed the clerks of courts and the registrar, as public officials, will act honestly and reasonably in the performance of the duties conferred upon them, and that there is nothing in the ‘certificate of title law’ which prohibits an aggrieved person from resort to the courts if a clerk of courts or the registrar, without warrant, arbitrarily or fraudulently denies or cancels a certificate of title, or if a clerk acts in like manner with regard to the notation of a lien. ’ ’
 

 The certificate of title in question here was improperly issued and is void in the hands of appellant.
 

 Section 6290-5, General Code, requires that if a certificate of title has not previously been issued in this state, the application therefor shall be accompanied by a manufacturer’s or importer’s certificate in the form prescribed by Section 6290-13, General Code, or by a proper bill of sale or sworn statement of ownership, the originals of which have been duly filed with the clerk of courts. The application for this certificate of title shows that the only evidence of ownership presented to the clerk of courts was “invoice number C-735” without any date and the simple statement that the “applicant acquired said motor vehicle by purchase from L. T. Patterson Company, 1010 Gilbert Ave., Cinti., 0.” This invoice number C-735 is dated November 6, 1937, and does not show any payment for the automobile in question. It is not conclusive of ownership, because it does not amount to a bill of sale and is not the substitute for a bill of sale or a sworn
 
 *520
 
 statement of ownership. At the time that this certificate of title was issued, appellee Usinger was the owner of the automobile in question, and by the terms of Section 6290-5, General Code, there was a period of three days from the delivery of the automobile on May 21 within which it was the duty of the dealer to make application for and obtain a certificate of title in appellee Usinger’s name.
 

 There is no provision in law for noting upon a certificate of title any chattel mortgage given prior to the enactment of the certificate of title law. By the provisions of Section 6290-9, General Code, the provisions of Sections 8560 to 8572, General Code, continue to apply to the deposit, filing, refiling or other record whatever of a chattel mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument or copy of the same made prior to the effective date of the certificate of title law and covering a motor vehicle.
 

 The clerk of courts is not authorized to note on the certificate of title any lien without the presentation of such lien to him. The act requires the clerk of courts to use reasonable diligence in ascertaining whether or not the facts in the application are true by checking the application
 
 and documents accompanying the same
 
 with his records. The evidence in this case does not show the existence of any chattel mortgage on file with the county recorder which had been assigned to appellant under the name of Automobile Finance Company. While Section 6290-6, General Code, requires the clerk to deliver the certificate of title to the holder of the first lien noted on the certificate of title, yet as the notation of a lien of a chattel mortgage and note held by Automobile Finance Company was improperly placed on the certificate of title, the certificate was improperly delivered (if delivered) to appellant, and appellant thereby gained no right or title to the certificate.
 

 
 *521
 
 Besides, the certificate of title, being issued upon tbe false representations of Munday and/or Nortbside Auto Sales, was void
 
 ab initio.
 
 Tbe very purpose of tbe law is to protect ownership against fraud.
 

 Appellant’s mortgage does not contain any notation by tbe clerk that such lien bad been noted on tbe certificate of title. Had tbe clerk of courts required, as be should have required, the production of tbe lien before issuing tbe certificate or noting it on tbe certificate, be would have found: (a) That tbe mortgage in question stood as assigned to Cincinnati Finance Company; and (b) on account of tbe date of its execution and filing with tbe county recorder, it was not an instrument or lien to be noted on tbe certificate of title!
 

 Therefore, tbe certificate of title introduced in evidence on behalf of appellant (plaintiff below) is clearly invalid, and the appellant has no right to rely upon same.
 

 There is a further reason why appellant bad no right to rely on tbe certificate of title, even if it bad been issued properly. Under Section 6290-4, General Code, unless tbe bolder of tbe certificate of title paid a valuable consideration therefor, waiver and/or estoppel máy still operate in favor of a person acquiring a motor vehicle from tbe owner thereof. Under tbe facts of this case, appellant is estopped from setting up its chattel mortgage against appellee Usinger.
 

 In tbe absence of a certificate of title, appellee Usinger, defendant below, could not show a title complete. However, there was no burden upon defendant below to show any title or right of possession. Tbe burden was upon tbe plaintiff below (appellant here) to show an unlawful detention by tbe defendant of a chattel of which tbe plaintiff below was owner or in which be bad some interest, and of which plaintiff was entitled to immediate possession.
 

 Under tbe facts in this case, plaintiff below was not entitled either to tbe right of property or the right of
 
 *522
 
 possession of this automobile. Although Usinger’s right of property may be defective by reason of his lack of possession of a certificate of title, the evidence clearly establishes that he had the right of possession. Replevin will not lie against one who has the right of possession at the time of the commencement of the suit.
 

 We are of the opinion that the trial court was justified in holding, under the evidence in this case, that the right of property, as well as the right of possession, was in defendant below, appellee here. Therefore, the judgment of the Court of Appeals in affirming the judgment of the Common Pleas Court, which affirmed the judgment of the Municipal Court of Cincinnati, should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman, Matthias and Hart, JJ., concur.