Matthias, J.
Was the Court of Appeals correct when it reversed the judgments for the plaintiffs on the supplemental petitions entered on the verdicts in the Court of Common Pleas and rendered final judgments for Home?
The reversal by the Court of Appeals was based solely on its interpretation of the applicable provisions of the policy of insurance issued by Home to Prosen. The court held that, regardless of whether, under the *542 Ohio Certificate of Title Act, the seller or the purchaser could claim a completed sale or assert any rights thereunder in an action between themselves, the provisions of the policy constituted the only obligation of Home, and its liability to the plaintiffs must be determined solely from an interpretation of the provisions of that policy.
The insurance policy was issued by Home to Prosen as named insured, covering the 1934 Plymouth automobile which was involved in the accident. The policy, effective October 7, 1946, covered bodily-injury liability to the extent of $5,000 for each person and $10,000 for each accident and property damage liability up to $5,000 for each accident.
Item 10 of the policy declares as follows:
“(a) Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile: (b) During the past year no insurer has cancelled any automobile insurance issued to the named insured: No exceptions. ’ ’
The insurance company under article I, coverage A and B, agreed with the insured, subject to the limits of liability, exclusions, conditions and the terms of the policy, as follows:
‘ ‘ Coverage A — Bodily injury liability.
“To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.
‘ ‘ Coverage B — Property damage liability.
“To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, *543 including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile.”
By III (Definition of insured) the policy declares:
“With respect to the insurance for bodily injury liability and for property damage liability the unqualified word ‘insured’ includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. # # # J)
The facts out of which this controversy arises are substantially as follows:
In April 1947, McFarland discussed with Prosen the purchase of his 1934 Plymouth automobile which was not then in running condition. An offer of $90 was made for it by McFarland provided he could put the automobile in running condition. After several weeks of work upon it and the addition of some, parts purchased by McFarland, on Thursday, May 8, 1947, he paid Prosen the sum of $90. It was contemplated that the car could be made to operate by Saturday, May 10, and on that day by the combined efforts of Prosen and McFarland the car was pushed until it started.
There was some conversation between Prosen and McFarland in regard to the transfer of the certificate of title to McFarland’s mother, but, no notary public being available, it was arranged that McFarland would return on Monday at which time Prosen was to transfer the certificate of title to Gertrude McFarland. Prosen retained the certificate of title in his own possession without having executed the assignment clause. The accident in question occurred early Monday morning, May 12, 1947, at a time when the title of the car was still in Prosen. Such assignment and delivery of *544 the certificate to Gertrude McFarland or William McFarland had not then been made and were not made until several days thereafter.
The primary and, as we conclude, the determinative question presented is whether under these facts Prosen was the owner of the Plymouth automobile within the terms of the insurance policy covering it and further, if so, whether McFarland was operating the automobile with the permission of Prosen, the insured.
In arriving at its decision, the Court of Appeals recognized the existence of an equitable title to the automobile in Gertrude McFarland by reason of the payment of the purchase price and the delivery of possession by Prosen to McFarland. That court then concluded that since there was title in Gertrude McFarland the use thereof whs made under a claim of right and not under permission granted by the insured, and, consequently, that the insurance policy did not cover the driver of the automobile at the time of the collision. The effect of such holding would be to authorize, for the purpose of the insurance policy in question, an owner to transfer title of his automobile without compliance in any respect with the requirements of the Ohio Certificate of Title Act, the pertinent parts whereof are as follows:
Section 6290-3. “No person except as provided in the preceding section hereafter shall sell or otherwise dispose of a motor vehicle without delivery [delivering] to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser, nor purchase or otherwise acquire a motor vehicle unless he shall obtain a certificate of title for the same in his name in accordance with the provisions of this chapter. ’ ’
Section 6290-4. “No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, here *545 after shall acquire any right,' title, claim or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer’s or importer’s certificate for the same; nor shall any waiver or estoppel operate in favor of such .person against a person having possession of such certificate of title or manufacturer’s or importer’s certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer’s or importer’s certificate duly issued, in accordance with the provisions of this chapter.”
Section 6290-5. “* * *
“In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser and in all other cases such certificates shall be obtained by the purchaser. In all eases of transfers of motor vehicles, the application for certificate of title shall be filed within three days after the delivery of such motor vehicle.
The rule is well established that words used in a contract of insurance are to be given their natural and usual meaning unless otherwise. defined in the contract. It is elementary that the law of the place where a contract is made enters into and becomes a part of the contract, and that the contract must be construed as though the law were written out in full therein. 9 Ohio Jurisprudence, 416, Section 189, and eases cited.
The words, “owner.” and “ownership,” as used in the contract of insurance herein, relating as they do *546 to the use of the automobile covered by the policy, must be construed in connection with the provisions of Sections 6290-3, 6290-4 and 6290-5, General Code, which have established the prerequisites of proof of ownership of motor vehicles in actions at law or in equity.
Section 6290-3, General Code, fixes the minimum duty of both the buyer and the seller of a motor vehicle to complete a sale. The seller is required to deliver to the purchaser a certificate of title with such assignment thereon as may be necessary to show title in the purchaser and the purchaser is required to obtain a certificate of title in his own name.
Section 6290-5, General Code, requires that, following the delivery of the certificate of title, an application for the issuance of a certificate of title in the name of the purchaser be filed within three days after the delivery of the motor vehicle, application to be made by the dealer where one is involved and in all other cases by the purchaser. Section 6290-4, General Code, makes essential the issuance of a certificate of title to a motor vehicle before any court in law or equity “shall recognize the right, title, claim, or interest of any person in or to any motor vehicle.”
In the case of Workman v. Republic Mutual Ins. Co., 144 Ohio St., 37, 56 N. E. (2d), 190, a claim was made against the Republic Mutual Insurance Company by Workman under a “garage liability endorsement” on a policy of insurance. An action was instituted seeking a declaratory judgment to require the insurance company to defend Workman in an action wherein they were sued by one Charles Kidwell who was injured as the result of a collision with an automobile driven by one Harley Rhodes. The insurance company refused to continue to defend the action in which a judgment had been rendered against Rhodes and Workman.
*547 The automobile driven by Rhodes had been purchased from Workman, an automobile dealer, the purchase price being secured by a mortgage. A certificate of title was endorsed and delivered to Rhodes by Workman, on which Rhodes made application for the issuance of a new certificate and redelivered it to Workman for filing with the clerk of courts within the three-day period. The accident occurred within the three-day period and before the certificate of title was filed with and reissued by the clerk of courts. This court held as follows in paragraph three of the syllabus :
“Where the insured sold an automobile and delivered possession thereof to the purchaser who signed an instalment note for the purchase price, executed a chattel mortgage securing the same, signed an application for transfer of the certificate of title which the vendor had delivered to the purchaser, and redelivered same to the vendor for filing in an adjoining county within the three days permitted by law, actual ownership with complete possession and control passed to the purchaser. (Automobile Finance Co. v. Munday, 137 Ohio St., 504, approved and followed.) ”
It is to be observed that in that case this court recognized that ownership and legal title could pass to the purchaser, within the meaning of a policy of insurance and the Certificate of Title Act, even though the filing with the clerk of courts and the issuance of a new certificate had not been accomplished.
The case of Mielke v. Leeberson, 150 Ohio St., 528, 83 N. E. (2d), 209, 7 A. L. R. (2d), 1342, was an action to recover for damages to an automobile asserted to be owned by the plaintiff. During the trial no evidence by way of a certificate of title was introduced. The Court of Appeals reversed the judgment of the Court of Common Pleas because of the absence of proof of title and rendered final judgment. This court reversed *548 the judgment of the Court of Appeals so far as it rendered final judgment, affirmed it as to the rest of the judgment, and remanded the cause to the Court of Common Pleas for a new trial. The syllabus of that case is as follows:
“Under the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer’s or importer’s certificate duly issued in accordance with the certificate of title law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment.”
That case applied the statute relating to certificates of title, and particularly Section 6290-4, General Code, holding as it does that the possession of a certificate of title is an essential indicia of ownership. It certainly follows that the retention of such certificate of title is an indicia of retained ownership.
Reference is necessarily made to Section 6290-3, General Code, wherein the method of delivery of such certificate of title is specifically provided. The Miellce case is particularly applicable here for were McFarland to bring an action to recover for damages to the automobile without endorsement and delivery of the certificate of title he clearly could not succeed for the very simple reason that legal title and ownership remained in Prosen until the delivery of the certificate of title.
The recognition by this court of the possession of the certificate of title as determinative of ownership is disclosed in the case of Kelley Kar Co. v. Finkler, 155 Ohio St., 541, 99 N. E. (2d), 665. In that case the automobile was sold on a conditional-sale contract in California. The purchaser took the car to Vermont *549 and to acquire a certificate there made an affidavit that lie was the owner of the automobile and that there were no liens against it. He then secured an Ohio certificate of title on the basis of which he sold and delivered the car to Finkler. This court held that the Ohio certificate of title covering the automobile would prevail over the claim based on the conditional-sale contract executed in California.
Those eases clearly and firmly establish the rule in Ohio that where endorsement and delivery of a certificate of title for an automobile are made, title passes even though there is a failure on the part of the recipient to secure the issuance of a new certificate in his name. It follows that where an owner fails to comply with the Certificate of Title Act by not assigning and delivering his certificate of title to the purchaser, title does not pass. Applying such rule to the instant cases, it must be concluded that Donald Prosen was the owner of the Plymouth automobile at the time of the collision which gave rise to the present litigation.
The definition of " owner ’ ’ as used in the insurance policy was a question of law for the court, which the Court of Common Pleas properly decided. The determination of the question of permissive use was a question of fact for the jury. The insurance policy which covered the automobile during the period of Prosen’s ownership continued in force up to and including the time of the accident. It is urged that the Court of Common Pleas erred in submitting the question of whether McFarland was engaged in the use of the automobile with the permission of the insured at the time of the accident. Upon that issue of fact evidence was adduced both to support permission and to deny it. That issue was submitted to the jury under instruction which we deem to be without error prejudicial to Home. The jury found that such permission had been granted and rendered its verdicts according *550 ly, and judgments against Home were properly entered by the trial court.
The Court of Appeals was in error when it held that the causes should not have been submitted to the jury, and not only reversed but rendered final judgments.
The judgments of the Court of Appeals are, therefore, reversed and the judgments of the Court of Common Pleas affirmed.

Judgments reversed.

Weygandt, C. J., Middleton, Hart and Zimmerman, JJ., concur.