JEFFERSON DAVID FRENCH, appellee, v. UNIVERSAL C. I. T. CREDIT CORPORATION and DICKEY FORD SALES, INC., appellants.

## No. 50876.

(Reported in 120 N.W.2d 476)

█ 

Mᴀʀᴄʜ 12, 1963.

Barnes, Schlegel & McGiverin, of Ottumwa, for appellant Universal C. I. T. Credit Corporation.

Bailey C. Webber, of Ottumwa, for appellant Dickey Ford Sales, Inc.

Robert J. Spayde, of Oskaloosa, for appellee.

Tʜᴏʀɴᴛᴏɴ, J.—Plaintiff seeks to replevin an automobile repossessed from him by defendants. Plaintiff's claim is that he purchased the 1958 Buick Limited from defendant Dickey Ford Sales, Inc., on March 28, 1959, a conditional sales contract was made out but later he paid for the car in full and the conditional sales contract was to be mailed to him. He did receive a certificate of title showing no lien. Defendant Dickey Ford contends plaintiff bought the car and entered into the conditional sales contract but at no time paid the price and that the failure of the certificate of title to show the lien of the conditional sale was due to a mistake and inadvertence on its part. Universal C. I. T. claims as a purchaser of the conditional sales contract from Dickey Ford and that its repossession was right because plaintiff had not made the payments as provided in the contract.

The jury believed the plaintiff's story and awarded him judgment, fixing the value of the car on the date of the taking at $3000, and for damages for wrongful detention in the sum of $1000. Defendants appeal urging numerous errors for reversal.

This is the second trial of this case in the district court. Both

1047

verdicts were in favor of plaintiff. The record does not show the reason for granting the second trial.

I. Defendants first contend it was error to admit in evidence plaintiff's bank account showing he had $10,000 on deposit in July of 1956. The claim is that it was too remote and not connected up. Actually it was connected up.

It is a fair inference from plaintiff's testimony that he withdrew the money from the bank, purchased United States Savings Bonds with part of it, later cashed the bonds and kept as much as $3500 in cash in his desk at home, and later transferred such cash to a raincoat placed in the trunk of his 1956 car. From this source he says he took the money to pay Dickey Ford $2350 for the 1958 Buick on March 28, 1959. He simply traced the source of his funds. That his manner of keeping funds is unusual does not render the evidence inadmissible. The admission of this evidence was within the sound legal discretion of the trial court and no abuse appears.

II. The next complaint of the defendants is it was error to admit the certificate of title, the application for the title, and a copy of the title. The argument apparently is, that because the right to possession was the question involved somehow title was not in dispute. It is true replevin is a possessory action. However, plaintiff's claim was based on his claim that he bought and paid for the Buick. These documents showed defendant Dickey Ford caused a certificate of title to be issued to plaintiff showing no lien. No citation of authority is necessary to show under the circumstances of the case that it would have been error to exclude the certificate of title. See sections 321.45(2) and 321.50, Code of Iowa, 1962. We have examined the authorities cited by defendants, Martin v. Ridge Motor Sales, Inc., 78 Ohio App. 116, 69 N.E.2d 93, and Automobile Finance Co. v. Munday, 137 Ohio St. 504, 30 N.E.2d 1002. They do not support defendants. In Professor Hudson's article, 3 Drake Law Review, 3, 13, we do note the statement, "* * * it is believed that a security interest of the type referred to in section 21 [section 321.50, Code of Iowa, 1962] should be valid as between the parties themselves." This, however, does not render a certificate showing no lien inadmissible. In this regard defendants also complain it

was error not to give Instruction No. 1 requested by them. The request in part reads: "* * * you are instructed that as between the seller and the buyer there exists a valid lien by conditional sales contract with reference to a motor vehicle whether the existence of such lien is endorsed or noted on the automobile title or not."

In this case the conditional sales contract had been assigned by Dickey Ford to Universal C. I. T. Universal C. I. T. repossessed the 1958 Buick. It was not the seller of the Buick. The court in Instruction No. 7 did instruct on the right of Universal C. I. T. to repossess upon failure of plaintiff to pay any installment actually owing. The court correctly applied the law to the evidence.

III. Defendants' next assignment of error is that it was error to refuse to instruct on impeachment of the witness, Albert Sales, for prior inconsistent statements. The witness, Albert Sales, testified for plaintiff. The record shows he was subpoenaed by defendant Dickey Ford. Defendants set out what are claimed to be prior inconsistent statements. The first item so set out is the only matter about which the witness testified on direct examination. It is as follows, direct examination:

"On a Thursday night we had just got out of a movie and was walking and he pulled up at a stop sign in this new car and asked us if we wanted to take a ride. We took a couple of turns around the block and went up to the Pantry Cafe and had coffee."

On cross-examination he admitted he had testified on a previous trial as follows:

"In the previous trial, I testified it was on a Thursday evening, and I saw him down town and stopped at the Pantry to have a cup of coffee with my wife, and he was down there."

To impeach a witness by proof of inconsistent statements they must be material to the issue. State v. Powell, 237 Iowa 1227, 1245, 1246, 24 N.W.2d 769; Borough v. Minneapolis & St. L. Ry. Co., 191 Iowa 1216, 1221, 184 N.W. 320; and at least inconsistent, Olson v. Des Moines City Ry. Co., 186 Iowa 384, 395, 396, 170 N.W. 466. In the first instance the question of materiality must be determined by the trial court. The point of

the witness' testimony here was that he had seen a receipt for the payment of money for the 1958 Buick. It is apparent the testimony complained of goes not to whether or not the witness saw the receipt but to the manner and order in which the witness and plaintiff arrived at the Pantry Cafe. This testimony is not material on whether or not the witness saw the receipt in plaintiff's possession.

The other testimony of which defendants complain all arose on cross-examination, e.g., at one point on cross-examination he testified, "* * * French met me first at Williams Dairy on the South side * * *." Later on cross-examination he testified, "I did not mention Williams Dairy in my previous testimony." "Williams Dairy" does not appear in witness' direct examination on this trial. And the versions are not inconsistent.

On cross-examination in this case the witness testified:

"I don't remember whether it was pen, pencil, ink or typewriter. It was written longhand. I don't remember if there was any typewriting on it. I just glanced at it. * * * It looked like a receipt."

Later on cross-examination he testified:

"In my former testimony, I testified that the piece of paper was about half typewriting or printing, part of it typed, and part of it written in. I don't remember now about the typewriting or printing on the paper. All I saw was the paper that looked like a receipt. I didn't examine it, just glanced at it."

These two versions are hardly inconsistent. On direct examination on this trial concerning the receipt the witness said: "* * * I seen his name and the words Buick Riviera, or Plaza, something like that, and there were some other writing on it. That's all I can recall. I didn't remember the dates or anything. As I remember it was an ordinary piece of paper."

It can hardly be said this last version is inconsistent with either of the two on cross-examination. Poor memory is not a prior inconsistent statement.

Another matter appearing in the testimony set out by defendants is the following:

"In the former trial in December 1959, I said I hadn't met French any until I came down from Davenport last night about

8:30 or 9 o'clock. I had forgot he had come up to Davenport. I am now sure he did come to Davenport, because that's when he asked me to be a witness on this trial."

The witness also admitted he denied the Davenport meeting with plaintiff until the county attorney talked with him. No place in his direct examination in this trial does the witness refer to the Davenport meeting with plaintiff. The evidence of the Davenport meeting is admissible to show bias or prejudice of the witness, but it does not furnish a basis for an instruction as to prior inconsistent statements.

An example that inconsistent testimony complained of must be inconsistent with that of the witness given on direct examination is found in Roberts v. Morse, 190 Iowa 1344, 1348, 181 N.W. 678, 679, "The conversation of Morse, as detailed by this witness, was inconsistent with the testimony given by him as a witness for the defendants." We find no error at this point.

IV. Defendants complain of questions asked Mr. Robert Miller, vice president of Dickey Ford, the man who sold the 1958 Buick to plaintiff, and the one who plaintiff claims he paid for the car and gave him the receipt. The questions asked concerned gambling by Mr. Miller. The record shows plaintiff testified Mr. Miller stated he (Miller) was feeling a little rough, that he lost $350 gambling the night before. Defendants did not object to this testimony. When similar testimony was sought to be elicited from Mr. Jack Wessell, a car salesman who accompanied plaintiff at the time he purchased the 1958 Buick, defendants did object on the grounds such evidence was immaterial and the form of the question leading. The witness was allowed to testify. He stated:

"I think it was strictly a conversation that, to the best of my recollection, it wasn't of any large nature of any kind. I think it was, to the best of my knowledge, was something of a small nature."

On his direct examination Mr. Miller denied any such conversation with Mr. Wessell or Mr. French. On cross-examination, without objection of any kind, Mr. Miller again denied any conversation with the men mentioned. He went on to testify:

"I do not ever gamble. In a previous trial I testified I don't gamble, very seldom. It depends on what you call gambling. I don't gamble in my definition of gambling."

Up to this point, defendants had allowed the initial testimony concerning gambling without objection. They had objected to the testimony of Mr. Wessell. Mr. Miller denied the conversations about gambling, both on direct and cross-examination. The failure to object to Mr. French's testimony allowed the evidence to become part of the record. Mr. Wessell's testimony was merely cumulative. Mr. Miller's denials on direct and cross-examination do not constitute a waiver of any objection to such evidence. It was in the record and he had a right to deny it.

However, when, without objection, Mr. Miller went further with whether he gambled and what constituted gambling, an area of gambling was again opened at least with defendants' acquiescence. Immediately after the testimony of Mr. Miller last above set out, he was asked if he was a member of the country club. Defendants objected that such was immaterial. The objection was overruled. It should have been sustained. Membership in a particular club was hardly material to the issue of payment or damages here involved. The witness answered, "Yes, sir." The next question, "Do you gamble out there? A. No, sir." There was no objection. Later on cross-examination Mr. Miller was asked, "Mr. Miller, did you ever gamble at the V. F. W.?" Defendants objected that it was irrelevant and immaterial, that it would incite prejudice against the witness. The answer was, "I don't believe so, no. * * * I will say no."

Defendants contend this evidence was immaterial and its purpose was only to incite prejudice against the witness and defendant Dickey Ford. Plaintiff does not attempt to justify the admission of this evidence on the theory it was material or relevant to any issue, but on the theory it was harmless error, if any.

We believe it is clear the evidence as to gambling at the V. F. W. was immaterial. Defendants had allowed the "gambling conversations" with plaintiff and at the country club to go in without objection. Certainly membership in the country

club, though immaterial, is not so prejudicial as to call for a reversal. This brings us to the question of gambling at the V. F. W. Is this question so prejudicial as to call for a reversal when we consider the state of the record on gambling and that this is a second trial? We think not. Generally speaking, the admission of cumulative immaterial evidence is not reversible error. See Lee v. Kirby, 195 Iowa 441, 191 N.W. 865; and Parks v. City of Des Moines, 195 Iowa 972, 191 N.W. 728. The claim of defendants is this evidence is not only immaterial but that it is unduly prejudicial. However, the defendants did not so consider such evidence when they failed to object. The testimony of Mr. Miller shows similar evidence was introduced in the first trial. Defendants were not surprised. In considering this question we must take into consideration that this is the second trial favorable to plaintiff. In Mundy v. Olds, 254 Iowa 1095, 1102, 120 N.W.2d 469, 473, we said:

"After two trials and a second appeal of the same case, we must examine and reexamine what has happened before ordering a third trial. A litigant is, of course, entitled to a fair trial, but his position in claiming that alleged error was so prejudicial as to cause a miscarriage of justice is somewhat weakened after two jury trials."

See also Porter v. Madrid State Bank, 155 Iowa 617, 619, 136 N.W. 666.

Under the circumstances of this case the evidence complained of is not so prejudicial as to call for a third trial.

V. Defendants' next assignment of error is that it was error to overrule their objections to testimony on cross-examination relative to the conditional sales contract not being filed in the courthouse and whether or not it was acknowledged. The record shows defendants' witness, Mr. Miller, had testified on direct examination quite fully concerning the contract and the multiple copies of it. He testified one copy was for filing and everything was filled out completely except the date. The objections were that such testimony was irrelevant and immaterial to any issue. The issue here came about by the direct testimony. It was proper to show on cross-examination that a copy was not filed and the instrument not completely filled out. This evidence

merely completes the picture left by the witness' direct examina-
tion.

 VI. Defendants asked the witness, Mr. Miller, whether
titles other than plaintiff's had gone out to customers on which
no lien was noted on other occasions. An objection that such was
immaterial was sustained. Defendants then asked the witness,
"Have you had previous to this time, or since, a similar error
to that which you have described here in relation to the French
case?" Objection was again sustained. Defendants made an
offer of proof that it was a common practice known to the witness,
Miller, in the Dickey Ford organization, "by the Union Bank
and Trust Company, the Fidelity Savings Bank, and the South
Ottumwa Savings Bank," to issue titles without having the lien
of a conditional sales contract or chattel mortgage noted thereon
for the accommodation of the purchaser and such is the ordinary
practice in the Ottumwa community, and that by reason of
mistake and inadvertence defendant Dickey Ford had previously
issued titles without noting liens and upon discovery requests
were made to the titleholder for the return of the title for
endorsement of the lien, which was done. No objection was made
to the offer. The court reserved ruling at the time. Later, during
the examination of the witness, the court made further inquiry
about the offer and stated the objection was sustained. Defend-
ants did not attempt to interrogate the witness along the lines
of the offer at any other time except as indicated. Defendants
contend error was committed against them here because the jury
did not have an opportunity to consider this evidence as bearing
on the validity of the instrument between the parties. Actually
evidence that at other times defendant Dickey Ford made mis-
takes is not evidence that it made a mistake this time. The evi-
dence that three banks, not involved in this case, and Dickey
Ford as a common practice do accommodate some customers had
no bearing on any issue. At no place did defendants contend
they intended to accommodate this plaintiff. In addition, the
existence of the practice of accommodating some customers
appeared in the testimony of defendants' witness, Rachel Hunt.
No error appears.

 VII. Defendants complain of leading questions

1054

asked plaintiff on direct examination. Wigmore's Code of Evidence, rule 96, Article 1, section 703, states: "A leading question * * * is forbidden, unless the circumstances of the case (1) render it not improperly suggestive * * *." The determination of this question is within the sound legal discretion of the trial court. The questions complained of were not improperly suggestive, they merely tended to speed up the trial. There is no merit in defendants' contention. See also Redden v. Gates, 52 Iowa 210, 215, 2 N.W. 1079, cited by defendants.

VIII. Defendants also urge it was error to admit into evidence the insurance policy purchased by plaintiff to cover the 1958 Buick. It is true this evidence might have little probative value except for the position of defendants. Their position was that he was to purchase insurance with an endorsement showing the existence of a lien based on the conditional sales contract. Defendants offered evidence bearing on their contacts with the insurance agency. The evidence complained of offered by plaintiff shows plaintiff's actions in regard to the insurance are consistent with his outright ownership of the car. There is no merit in defendants' contention.

IX. Defendants' last assignment of error that their motions to direct, for judgment notwithstanding the verdict, and for a new trial should have been sustained, is directed to our general supervisory control over jury verdicts. Their argument is that the evidence is insufficient to support the verdict because in their opinion it is improbable. They point out plaintiff and his witnesses were impeached. In short their argument is that plaintiff's story is incredible because defense witnesses are more credible. They apparently do not contend plaintiff's evidence is in conflict with incontestable facts and entirely inconsistent with any theory other than the witnesses were mistaken. See Lamb v. Standard Oil Co., 250 Iowa 911, 913, 914, 96 N.W.2d 730, 731, and citations. In support of their argument on our supervisory control they cite DeToskey v. Ruan Transport Corporation, 241 Iowa 45, 51, 40 N.W.2d 4, 17 A. L. R.2d 826; and Soreide v. Vilas & Company, 247 Iowa 1139, 78 N.W.2d 41. These cases refer to our supervisory control as to the amount of the verdict, the point urged here is not directly considered. It is

sufficient to say plaintiff's evidence of payment of the conditional sales contract to defendant Dickey Ford's Mr. Miller under all the circumstances of this case is substantial. Plaintiff is entitled to have his evidence given the most favorable construction it will reasonably bear. So viewed such evidence sustains the judgment. —Affirmed.

All JUSTICES concur except HAYS, J., not sitting.