J. R. WIMBER v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

114 551
123 238
114 551
142 676

**Damages:** EXCESSIVE VERDICT REDUCED. Plaintiff, a brakeman, was 39 years old, and in good health at the time he was injured. His injury necessitated amputation of the leg six inches below the knee, with the usual attendant consequences of such injury, but without any protraction of suffering, or more than average decrease of earning ability. *Held*, that a verdict in his favor for $14,500 should be reduced to $8,000.

**Evidence:** IMMATERIALITY: *That brakeman has been frequently discharged.* In an action by a brakeman for injuries, a question as to whether plaintiff had frequently been discharged by railway companies was properly excluded, as immaterial.

*Same.* Evidence in an action for injuries to a servant that he falsely represented to defendant that he was married and at the time of his injury sent for a woman whom he represented to be his wife, was immaterial.

OPINION AND CONCLUSIONS. Where in an action for injuries, plaintiff, an experienced brakeman, was asked, "Who had authority to start the engine and car?" such question was not objectionable, as calling for an opinion or conclusion.

*Same.* Plaintiff, a brakeman, after testifying as to what he was earning at and before the time of his injury, was asked, "What were you capable of earning, or were you earning at other times, prior to this?" *Held*, that, in view of the accompanying questions this did not call for the expression of an opinion, but the statement of a fact.

DESCRIPTION OF PLACE OF ACCIDENT: *Photograph.* Testimony was admitted that a photograph exhibited did not show a set of guard rails and that said rails had been removed from the place of accident since the accident. While there was evidence tend-

ing to show that plaintiff's foot was caught in the guard rail, no negligence on account of the rail was plead. *Held*, the testimony was admissible to assist in understanding the exact condition of the place of accident and the manner in which plaintiff was injured.

HARMLESS ERROR:    *Reading immaterial affidavits.*    The reading of affidavits immaterial to any issue in a cause is harmless error.

Charge and Proof:    DECREASED EARNING POWER.    Evidence that plaintiff, a brakeman, lost his foot and part of his leg in an accident will sustain that part of an instruction on the elements of damage which recites "the decreased or impaired ability to labor and earn money which he has sustained as the direct and natural result of the injury."

Misconduct in Argument.    Plaintiff, a brakeman, claimed that he was injured by reason of the engineer's starting the engine without the signal from him, required by the rules.    Plaintiff's attorney insisted in argument that the engineer was an interested witness, in that if he had testified that he had started the engine without orders he would be discharged from defendant's service; that such testimony would be an admission of gross negligence on his part.    *Held*, a legitimate argument to show the interest of the witness.

*Appeal from Hardin District Court.*—HON. S. M. WEAVER, Judge.

THURSDAY, OCTOBER 10, 1901.

PLAINTIFF brings this action to recover damages for personal injury sustained while in the employ of the defendant as head brakeman on a freight train, and when engaged in uncoupling an engine and freight car, which injuries necessitated the amputation of his right leg about six inches below the knee.    He alleges that he was injured by reason of defendant's servants in charge of said engine causing it to move back against him without any warning or signal to him.    The defendant answered, denying the charge of negligence, and alleging that plaintiff assumed the risk incident to the service he was rendering.    Verdict and judgment were rendered in favor of the plaintiff, for $14,500. Defendant appeals.—*Reversed,* unless plaintiff remits part of judgment.

*G. W. Seevers* and *L. C. Blanchard* for appellant.

*Otis & Godfrey, Albrook & Lundy,* and *T. D. Sheehan* for appellee.

GIVEN, C. J.—I. The plaintiff, in the line of his duties, was engaged in switching cars. It became necessary for him to uncouple a freight car attached to the rear of an engine, and to do so he had to go between the engine and car. It was the duty of the engineer to stop and start the engine, on signals from the plaintiff alone, while engaged in this work. Plaintiff claims that the engine was stopped, that he then went between the standing engine and car to draw the coupling pin, and that, without any signal from him, the engineer negligently started the engine backward without warning, and in consequence of which the plaintiff was injured. The defendant claims that the plaintiff had not signaled that the engine be stopped, that it was not stopped, but was moving backward pushing the car at the time the plaintiff went in to draw the pin, and therefore the engineer was not negligent, and plaintiff was guilty of contributory negligence in going between the moving engine and the car. If the engine and car were standing still when the plaintiff went in, and the engineer had no signal from the plaintiff to start, he was guilty of negligence in doing so. If the engine was moving when the plaintiff went in, the engineer was not negligent, as there is no claim that the plaintiff signaled for a stop at the time, or after, he went in. The controlling question of fact is whether the engine was standing still or moving at the time the plaintiff went in to uncouple.

II. A photograph of the place of the accident was exhibited, and plaintiff was permitted to testify, over defendant's objection, that it showed a different situation from that which existed at the time of the accident, in that it does not show a set of guard rails that had been taken out after the accident. There was evidence tending to show that plaintiff's foot was caught in the guard

rail, but there was no charge or claim of negligence on account of the presence or condition of the guard rail, and the court instructed that this evidence was "immaterial, except so far as it may assist you in comprehending and understanding the exact condition of the place where the accident occurred, and the manner in which plaintiff was injured." Appellant complains of the admission of this evidence, and cites *Cramer v. City of Burlington*, 45 Iowa, 627, and *Hudson v. Railroad Co.*, 59 Iowa, 581, but these cases are not applicable, as the testimony therein related to the very charge of negligence. This evidence was no more objectionable than that which showed the presence of a switch, or any other fact descriptive of the place.

III. Plaintiff was asked: "When you went in there to make the uncoupling, and while there, who had the authority to start the engine and car?" He was also asked to state the methods of the movement of the train, and by whose authority it was moved on the defendant's road under the circumstances in which he was situated. Defendant objected as calling for an opinion and conclusion; but not so, we think. The plaintiff was a brakeman of long experience on different roads. He was asked to state the general custom, and then the custom as observed on the defendant's road. To say who, under the circumstances, controlled the movements of the engine, was not the expression of an opinion, but the statement of a fact,— a statement as to the rule or custom in such cases. There was no error in the ruling. See *Quinlan v. Railway Co.*, 113 Iowa, 89. Plaintiff was asked: "What were you capable of earning, or were you earning, at other times prior to this?" Defendant objected, as incompetent and immaterial, which was overruled, and the witness answered: "From $2 to $2.70 a day, 10 hours work." The ability of the plaintiff to earn was the fact to be arrived at, but it was not competent for the plaintiff to give an opinion as to his ability. That was to be shown by

what he had earned in the past, considered in the light of his age, his physical and mental condition, and education and experience. The witness had just been testifying to what he was earning at and before the time he was injured, and, owing to the form of the question and the answer given, we think he understood the inquiry to be as to what he had earned in the past; and therefore the answer was not an expression of opinion, but the statement of a fact. Plaintiff was asked on cross-examination: "Have you frequently been discharged by the railway companies?" to which plaintiff's objection as immaterial and improper was sustained. If this cross-examination had been permitted, it would follow that inquiry should be made as to the cause of his being discharged, and whether it was owing to his fault or not, which would have led to investigation foreign to this case. Defendant sought to show on cross-examination of the plaintiff that he falsely represented to the defendant that he was a married man, and that when he was injured he sent for a woman, who remained with him in the hospital as his wife, but who was not his wife. This was immaterial, and plaintiff's objections were properly sustained.

IV. Complaint is made of the conduct of Mr. Sheehan, attorney for plaintiff, in the closing argument. Several affidavits, somewhat conflicting, appear in the record, but we take the bill of exceptions as showing what occurred. Mr. Courtright, the engineer, was examined on behalf of the defendant, and Mr. Sheehan insisted in argument that he was an interested witness, and that, if he had testified that he started the engine without orders from Mr. Wimber, he would not be retained in defendant's service. He said: "I do not charge, and do not wish to be understood as saying, that the defendant would discharge the witness for telling the truth, or would coerce him into telling an untruth; but I mean that if Courtright had testified or admitted what we claim to be

true—that he started the engine without signal or order from plaintiff to do so—such testimony would be in effect an admission or confession of such gross negligence on his part that the company would be justified in refusing to keep him in its employ another hour.' Hence you see that Court-right is by no means a disinterested witness." This was a legitimate argument to show the interest of the witness Courtright. Mr. Sheehan, in the course of his argument, read an affidavit filed by the defendant at a former term for a continuance, and an affidavit in resistance thereto, which had not been introduced in evidence, to which reading the defendant objected. It appears that one of the defendant's counsel, in the course of his argument, read and commented upon affidavits filed for and against a motion for security for costs which had not been offered in evidence. Controversy arose between counsel as to reading these last-mentioned affidavits, whereupon the following occurred: Mr. Sheehan said: "All we ask is the same privilege to read to the jury some other affidavits which are filed in the case." To which remark Judge Blanchard replied, in substance, "That is all right," or, "You have a right to;" and it was thereafter that Mr. Sheehan read the affidavit as to the reading of which the appellant complains. There was nothing in any of these affidavits bearing upon the issues. They were entirely immaterial as to any question to be determined, and even if reading them under the circumstances was misconduct it was without prejudice.

V. The court, after instructing as to several elements of damage, added: "And the decreased or impaired ability to labor and earn money which he has sustained as the direct and natural result of the injury which you find he has suffered by reason of defendant's negligence." Appellant insists that there was no evidence to sustain the part of the charge quoted. There was the undisputed fact that plaintiff had lost a foot and part of his leg,

and it is certainly a matter of common knowledge that such an injury decreases the earning capacity of the injured person, and that it disqualifies him for many occupations, and renders him less capable for others. It is complained that the court did not instruct that the jury should consider the plaintiff's ability to earn by intellectual as well as manual labor. The instructions are sufficiently broad to include all lines of industry.

VI. Lastly, the appellant insists that the verdict is excessive. In *Collins v. City of Council Bluffs,* 32 Iowa, 324, we said: "In no case ought a verdict to be disturbed unless it is so flagrantly excessive as to raise the presumption that it was the result of passion or prejudice or undue influence, and not the result of an honest judgment and the lawful discretion of the jury." This plaintiff was in his thirty-ninth year at the time of the accident. His expectancy of life was 26 years, and he was in good health. The injury necessitated amputation of his right leg about six inches below the knee, and caused the pain, suffering, mental anguish, loss of time, and decreased ability to earn, usual in such cases. The expenses incident to the injury were largely borne by the defendant. As respects damages, this case is quite like *Kroener v. Railway Co.,* 88 Iowa, 16, though not calling for so large an allowance for future disability, as in that case Kroener was only 20 years of age, while plaintiff was 38. In this case, serious as the injuries are, they are not so much so as to the elements of damage as many cases cited wherein verdicts for large amounts were sustained. Plaintiff's sufferings were not so protracted, nor his future disability so great, as in most of these cases. In *Kroener's Case,* we held that a verdict for $12,000 was excessive and far beyond the average in such cases, and plaintiff was required to remit all in excess of $8,000. The elements of damage in this case are surely not greater than in that, and in awarding the unusually large sum of $14,500 damages, under the facts

of this case, we are constrained to hold that the verdict is excessive, and that the plaintiff should be required to remit all in excess of $8,000. If plaintiff elects to remit all in excess of $8,000, the judgment, as thus reduced, will stand affirmed; otherwise it will stand reversed, and the case will be remanded for further trial.—REVERSED.