GEORGE B. HARMS, appellee, v. CLINTON RIDGEWAY et al.,
defendants, and MARTIN L. FREEMAN, appellant.

## No. 48463.

(Reported in 64 N.W.2d 286)

MAY 4, 1954.

L. V. Gilchrist, of Denison, for appellant.

Sidner, Lee & Gunderson, of Fremont, Nebraska, and Raun & Franck, of Denison, for appellee.

LARSON, J.—In the early morning of February 17, 1951, defendant Clinton Ridgeway, driving an empty tractor-trailer transport owned by defendant Martin L. Freeman eastward on Highway 30 near Dows City in Crawford County, Iowa, collided with a one and one-half ton truck loaded with cattle, owned and operated by the plaintiff, Harms, proceeding west-

ward. There was little question as to the liability of defendant Ridgeway and he did not appear or defend at the trial. The principal issues involved in this case were joined in the questions of whether the tractor-trailer unit was being operated with the consent of the owner at the time and place of the accident, and whether the plaintiff had introduced sufficient material evidence of impairment of earning capacity to permit a jury to place a value thereon. The trial court submitted both issues to the jury and it awarded plaintiff recovery in the sum of $20,000. Defendant Freeman appealed.

I. The law is well established in this state and our decisions are in accord that when ownership of a vehicle is established at the time of an accident a prima-facie case is made out that the vehicle was in the owner's possession and that it was being operated for him. Landry v. Oversen, 187 Iowa 284, 174 N.W. 255.

We have consistently held that such a prima-facie case is overcome by a denial of the owner that such operation was with his consent, and that the burden of proof remains with the complainant to prove that the vehicle was being driven with owner consent. These matters have been clearly and ably discussed, as well as summarized, in our recent cases of Bridges v. Welzien, 231 Iowa 6, 300 N.W. 659, and Anderson v. Lehner, 243 Iowa 851, 52 N.W.2d 513. It is unnecessary to repeat those discussions, for it is sufficient to say that whether the court was correct in directing a verdict for the defendant owner, or submitting the question of owner consent to the jury, depends largely upon the evidence or proof introduced in the case. We have often recognized that the defense of nonconsent is one which can easily be made with little probability that it can be directly refuted. We conclude that if there is substantial evidence of facts and circumstances from which inferences may reasonably be drawn refuting the owner's denial of consent, the issue then becomes one upon which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion. A list of cases where we held such evidence was sufficient, as well as a list where we held otherwise, appear in Bridges v. Welzien, supra.

Each such case depends largely upon the facts and circumstances shown by the complainant as well as the reasonable or unreasonable character of the owner's testimony denying owner consent.

 Let us turn then to the evidence before the court in this matter. The defendant Freeman testified that he gave possession of the outfit to defendant Ridgeway to use to haul cars for a firm operated by Mr. Harry Christiansen in Pontiac, Michigan. Freeman maintained it was only for a trip to Fort Wayne, Indiana, and stated that if he had known Ridgeway was going out into Iowa he would not have allowed its use. He also testified to a usage agreement with Ridgeway whereby Freeman was to pay Ridgeway driving mileage at the established rate and receive 75% of the cost of the haul for the use of the rig. The distance to Fort Wayne was only 175 miles, but the driver had had possession of the rig for ten days when the accident occurred.

Plaintiff introduced the testimony of Christiansen who denied discussing any proposed trip to Fort Wayne with either Freeman or Ridgeway, but stated that he did furnish the load of cars for the western trip sometime in February 1951. Christiansen also stated that Freeman advised him after the accident that Ridgeway was driving for him. Several other witnesses testified that prior to the answer filed in this matter Freeman admitted to them that "his driver had had an accident with his truck at Denison, Iowa." Ridgeway did not appear or testify.

While the owner contends none of these facts or circumstances are inconsistent with his position of an unauthorized trip by the driver, yet the trial court thought they were sufficient to submit to the jury on the question of owner consent. We think this was correct, and are satisfied that the facts and circumstances shown by the plaintiff, together with the reasonableness or unreasonableness of defendant's alleged restricted consent, made a jury question, and that the court did not err in refusing to direct a verdict for defendant Freeman on this issue.

 We find no abuse of the trial court's discretion in permitting plaintiff to offer, as rebuttal testimony, evidence which might well have been offered in the first instance. Large discretion is lodged in the trial court in such matters of procedure,

and it was not unreasonable for plaintiff to await defendant's explanation of who was driving his unit in Iowa and by what authority or lack thereof before this explanation was met by plaintiff's rebuttal.

Defendant also complains of the court's Instruction No. 11, maintaining that the jury could be misled into giving evidentiary weight to the inference or presumption of consent from admitted ownership. We agree that the sentence structure used by the court was not the best, but we are nevertheless convinced that the instruction taken as a whole would not mislead a jury, for it correctly stated that "if, considering all the evidence in the case, the plaintiff has failed to establish by a preponderance of the evidence that the car was being driven with the consent of the defendant Martin L. Freeman at the time of the collision in question, you should find for the defendant Martin L. Freeman." At any rate it did not amount to reversible error.

II. Defendant further contends that the trial court erred in submitting to the jury the question of damages for the impairment of plaintiff's earning capacity. He contends, with merit, that there was no evidence introduced pertaining to the value of plaintiff's earning capacity prior to the injury. This the plaintiff does not deny, but maintains that he has shown the necessary elements of his occupation, duties performed, the extent of his disability, and his life expectancy, and that with such facts shown the jury may, in accordance with their common knowledge and experience, fix the amount of his damage.

We considered this matter in the early case of Winter v. The Central Iowa Ry. Co., 74 Iowa 448, 450, 38 N.W. 154, 155, and said: "Plaintiff introduced evidence tending to prove that he was disabled by his injuries for several months. He also proved his business or vocation. But there was no evidence as to the value of his time or services. * * * The value of time or services, being susceptible of proof, should not be left to the jury, to be determined at their discretion, or upon their own judgment, but the party seeking to recover therefor should be required to establish his claim by competent evidence. * * * The uniform holding of this court has been that it is judicial

error to submit such questions to the jury, when there is no evidence from which it can be determined [citing cases]."

We also said in Lange v. Bedell, 203 Iowa 1194, 1202, 212 N.W. 354, 358: "It may be conceded that no evidence was offered to prove the value of the time lost. Appellee was, therefore, not entitled to recover on this item."

In Cubbage v. Estate of Youngerman, Inc., 155 Iowa 39, 47, 134 N.W. 1074, 1078, the contention was made that there was no evidence whatever to show a loss on account of diminution in earning capacity, and therefore it could not be considered. It appeared, instead, that plaintiff's salary was increased soon after the injury. We rejected there the assumption that the only competent evidence of damage on account of loss of earning capacity is that afforded by proof that on account of the injury the actual earnings of the injured party were less than before the injury. We said this might be competent evidence, but the converse is not necessarily true, and that "We understand the rule to be that impairment of physical capacity in itself may be presumed to impair the general earning capacity of the person who is injured; the extent of impairment being a question for the jury under all the circumstances. Wimber v. Iowa Central Ry. Co., 114 Iowa 551 [and other cases cited]."

In 15 Am. Jur., Damages, section 91, page 502, we find the following statements: "There must be established proof of facts from which they [damages] may be determined with reasonable certainty and some evidence showing the plaintiff's earning power and to what extent it has been impaired. There is no fixed rule for estimating the damages to be recovered for loss or diminution of earning capacity. The jury should award a fair and reasonable compensation, taking into consideration what the plaintiff's income would probably have been, how long it would have lasted, and all the contingencies to which it was liable."

Other jurisdictions have also struggled with this problem. It has often been held that the determination of damages for the impairment of earning capacity is not susceptible to arithmetical calculation, that its ascertainment must to a large

degree depend upon the practical sagacity, common knowledge and good sense of the jury, in considering the age, skill, training, experience and industry of the plaintiff, the extent of his physical injury, the wages commonly received by one pursuing a similar occupation in the vicinity of the plaintiff's employment, and whatever other evidence is understood to aid them in arriving at a just conclusion. Mitchell v. Walton Lunch Co., 305 Mass. 76, 25 N.E.2d 151.

But such damages cannot be based upon mere conjecture or speculation, and the prospective earning capacity that plaintiff lost as a result of the accident is too remote, speculative and uncertain, when based only on his mere opinion, to be recoverable. Wimber v. Iowa Central Ry. Co., supra; McCracken v. Stewart, 170 Kan. 129, 223 P.2d 963.

The Oregon courts in Shaw v. Pacific Supply Co-Operative, 166 Ore. 508, 511, 113 P.2d 627, 628, said there is no precise rule by which to measure damages for impairment of earning capacity, but "the question is peculiarly one for a jury, to be determined in view of the facts proven and in accordance with their common knowledge and experience; though the evidence, of course, must furnish a basis for the determination."

In that case the farmer, as here, was shown to be unable to perform the physical labor he had been able to do prior to the injury, but in addition thereto he showed a net income of $3000 per year and a gross income of $6000, before the injury, that he was fifty-five years of age and a strong man in good health. It was there held for jury determination, and is in accord with our thinking on the subject.

While it is true the wages paid a hired man are not the measure of one's loss, yet in most jurisdictions it appears admissible to throw some light to aid the jury in its determination, along with other facts, such as the plaintiff's previous earnings, his age, experience and his life expectancy. It seems necessary that one show what he has been able to accomplish in the past as an element which may throw light on what he would have been able to earn in the future had his ability to work not been destroyed by the injury.

Cases of a like nature are Leave v. Boston Elevated Ry. Co., 306 Mass. 391, 28 N.E.2d 483, and Doherty v. Ruiz, 302 Mass.

145, 18 N.E.2d 542. In the latter case the court held that where the employment of the plaintiff, if he had not been injured, would have continued at a uniform rate of pay during the period of his incapacity, his loss in wages furnished a practically accurate measure of the injury to his earning capacity. However, it is pointed out that loss of wages is not, correctly speaking, an element of damage. The element of damages in question is properly described as compensation for diminution of earning power, or, conversely, as the value of that part of plaintiff's capacity to work and earn of which he was deprived. One who would not have worked if he had not been injured may nevertheless recover for his impaired power to work and earn. Millmore v. Boston Elevated Ry. Co., 198 Mass. 370, 84 N.E. 468. Also one who continued to receive wages from his employer as a gratuity may recover damages for impairment of earning capacity. Donoghue v. Holyoke Street Ry. Co., 246 Mass. 485, 141 N.E. 278. It is quite clear that the diminution in earning capacity of the plaintiff himself, and not that of some standard or normal man in his position, furnishes the true test. Stynes v. Boston Elevated Ry. Co., 206 Mass. 75, 91 N.E. 998, 30 L. R. A., N. S., 737.

Plaintiff cites and relies upon the case of Gray v. Dieckmann, a New Hampshire case, 1 Cir., 109 F.2d 382, where the court held that where there is a clear disability, the jury may undoubtedly award what, in their best judgment as reasonable men, should be awarded irrespective of whether any definite income is proved or not. This case involved a retired businessman seventy-seven years of age who had no present income. It was shown therein that it required $15 per week to hire a man to do the tasks around the house that he had done prior to the injury. This evidence was held to satisfy the obligation of the plaintiff to produce competent and material evidence or circumstances to furnish a guide for the jury, and to show facts that would tend to evaluate plaintiff's earning capacity prior to the injury. It does not greatly aid the plaintiff herein.

He also cites the case of International & G. N. R. Co. v. Edwards, Tex. Civ. App., 91 S.W. 640, wherein the jury was permitted to award damages for impairment of earning capacity

of a sharecropper, or farm laborer, without proof of the value of plaintiff's services. His occupation was shown to be such that there are no rules by which to measure the value of his services or time, and that it could only be approximated. The court held, this being true, the jury would be authorized to allow him such damages or compensation as they deemed reasonable in view of the facts proven and in accordance with their common knowledge and experience. It was, however, pointed out that the case is different from those wherein the value of professional services or uncommon articles is involved.

It may be true generally that the earnings of a common laborer are such that in a given locality jurors may be presumed to be reasonably familiar with the value of such services and may measure the same by their own knowledge and experience, but that is not the case before us and we do not decide that question here.

 Farming as known in this state is a business and would not fall within the group of occupations where a jury could reasonably be expected to know the value of one's services in operating that business. The farm in question was in Nebraska, and there was no showing of even the amount of stock or grain raised. It only appeared that plaintiff was a tenant farmer on 400 acres of land, that he raised grain and stock, and that he did some livestock scalping. He neither demonstrated his earning capacity, his ability to operate a farm business, nor his ability as a farmer. He did not show even the wages he paid his extra hired hand, and made no showing as to why a valuation could not be shown as to his earning power before the injury. Circumstances shown here, we think, fall far short of those required for jury submission, even in jurisdictions that do not require proof of a prior definite income. We think it not unreasonable to require some such showing and conclude that the rule in Iowa is that while it is unnecessary to show specifically the loss of earnings due to the injury, some evidence of the value of the injured party's earning capacity prior to the injury should be shown as a basis or reasonable standard to guide the jury in determining plaintiff's loss or damage. Evidence of a definite income, if available, must be shown, and if

not available, the burden remains on the plaintiff to show why it is not, and further to show other relevant circumstances that would justify the jury, as reasonable men, to rely upon their best judgment to determine the loss. At any rate, such determination cannot be left to pure speculation and conjecture.

We believe it highly improbable that an Iowa jury could in its wisdom and experience be reasonably expected to know what would be the earning capacity of a Nebraska farmer operating a 400-acre farm and also engaged in livestock scalping. It is too much to ask of the jury to fix this loss without some reasonably certain guide. Our conclusion is that the trial court was in error in submitting this item of damage to the jury, for no such reasonably certain guide appears.

We are unable to determine what part of the total damage was awarded plaintiff as compensation for diminution or impairment of earning capacity, but it must have been at least $12,805. We therefore set aside the judgment and direct that the case be remanded for a new trial.—Reversed and remanded.

BLISS, C.J., and OLIVER, GARFIELD, WENNERSTRUM, SMITH, HAYS, and THOMPSON, JJ., concur.

JUSTICE MULRONEY concurs in result.