MEARL WOODE et ux., appellees, v. FRANK E. KABELA et ux., appellants.

No. 51271.

(Reported in 128 N.W.2d 241)

MAY 5, 1964.

Messer & Cahill and Jerry L. Lovelace, all of Iowa City, for appellants.

Casterline & Hamiel, of Tipton, for appellees.

PETERSON, J.—This is a consolidated action by Mr. Mearl Woode and his wife, Marvel L. Woode, for property damages and for injuries sustained in an automobile accident. Mr. Woode asked for damages for the cost of repair of his Oldsmobile automobile and for medical expense, loss of income, and for pain and suffering. Marvel L. Woode asks for medical expense and for damages for pain and suffering. The jury awarded a verdict of $5552.10 to Mearl Woode, and $1565 to Marvel L. Woode.

On December 15, 1959, at about ten o'clock a.m., Mearl and Marvel L. Woode and their two small children were traveling in Mr. Woode's 1956 Oldsmobile in a westerly direction on Iowa Highway No. 1, at a point about five miles east of Iowa City. As they approached a drive leading from the Leo Kabela farm to

the highway, a car owned by Frank Kabela and driven, with his consent, by his wife, Darlene Kabela, was moving southerly in a lane toward Highway No. 1. Mrs. Kabela was accompanied by her two small children.

The Woode car was traveling at a rate of from fifty to sixty miles per hour. The rate was reduced to forty-five to fifty miles when Mr. Woode observed Mrs. Kabela. As the Kabela car neared the north edge of the highway Mr. Woode observed its slowing speed and consequently thought it was going to stop before moving onto the highway. As Mrs. Kabela was nearing the highway she was looking away from the Woode car in the opposite direction.

Mr. Woode was from 150 to 180 feet from the Kabela car when Mrs. Kabela slowed up and he thought she was stopping. She testified the Woode car was about 400 feet away when she first saw it. Both Mr. and Mrs. Woode, Mrs. Kabela and Mr. David J. Cook, Deputy Sheriff, all testified Mrs. Kabela stopped her car in Mr. Woode's lane of traffic. Seeing Mrs. Kabela blocking his lane of traffic completely, Mr. Woode maneuvered his car toward the left lane of the highway to avoid striking her broadside. Then, Mrs. Kabela started up again and proceeded to block the south lane of the road toward which Mr. Woode was headed in order to avoid hitting her.

Mr. Woode then quickly headed his car back into his own lane, and he did avoid a collision of the cars. However, the quick maneuvering of his car caused him to lose control of the car as it drove past Mrs. Kabela and the car left the paved highway, ran along the side of the road for awhile and then struck a set of concrete steps in the north roadway ditch, and the car was wrecked.

There is evidence Mrs. Kabela stated to both Mr. and Mrs. Woode, when they all alighted from their cars, that it was her fault. She stated it twice to Mr. Woode and once in the presence of Mrs. Woode. At the trial of the case she denied she had made this statement.

Mr. Woode's car was damaged to the extent of approximately $945. He sustained personal injuries and became afflicted with a very serious nervous condition which deprived him of his abil-

ity to work regularly and steadily for the following two years. Mrs. Woode also sustained somewhat severe injuries, necessitating medical care, and creating substantial pain and suffering, which continued until the time of the trial.

Appellant raises the following assignments of error: 1. Failure of the court to rule inadmissible testimony on behalf of plaintiffs regarding the cost of repairing the Woode automobile. 2. Failure of the court to rule inadmissible and strike evidence of plaintiff Mr. Woode regarding loss of earnings. 3. Error of the court in submitting instructions 6, 7, 8 and 9 to the jury on specifications of negligence: a. Failing to keep a proper lookout; b. failing to have automobile under control; c. blocking highway at time and place it should be lawfully used by plaintiffs; d. entering public highway from a farm road without stopping. 4. Error in instructing the jury relative to medical expenses of $497.35 by Mearl Woode and $65 by Marvel Woode. 5. Instructing the jury relative to pain and suffering of Mearl Woode and Marvel L. Woode. 6. Instructing jury relative to dormant nervous condition of Mearl Woode. 7. Whether the verdict of the jury was excessive and contrary to law under the pleadings and evidence.

█ I. The general rule is that where a jury has found a defendant was negligent and is liable, the measure of damage as to an automobile is the reasonable cost of repair, provided that, when repaired, it will be in as good condition as it was before the injury, not exceeding the value of the car immediately before the collision. Fischer v. Hawkeye Stages, 240 Iowa 1203, 37 N.W.2d 284; Langham v. Chicago, R. I. & P. R. Co., 201 Iowa 897, 901, 208 N.W. 356, 358; Langner v. Caviness, 238 Iowa 774, 782, 28 N.W.2d 421, 425, 172 A. L. R. 1135; 5 Berry on Automobiles, Seventh Ed., section 5.229, page 364; Laizure v. Des Moines Ry. Co., 214 Iowa 918, 241 N.W. 480.

█ The record in the case at bar discloses that the necessary evidence was offered to comply with the requirements above outlined. Mr. Woode was engaged in the body shop business. He had been engaged in that business for seventeen years. He testified he made many estimates as to cost of the repair of cars which were damaged. The next day after the accident he pre-

pared such a careful estimate, both as to the parts needed and as to the labor of repair, and his total for repairing the Oldsmobile car was $945.65. He had a competitor in the city engaged in the identical type of work in which he was engaged whose name was Dale L. Stiff. Mr. Woode asked him independently and without any consultation between the two shops to make up an estimate of what the cost of repair would be. Mr. Stiff's estimate was $944.37. Mr. Woode testified on the witness stand in connection with the repair of his car that it was his recollection that it cost him approximately $945.

As to the other element referred to in the cases above cited, that the cost of repair must not exceed the value of the car, Mr. Woode testified he had the car sold at $1400 just before the wreck. Another witness competent to testify as to the value of the car also appeared on the witness stand. His name was Donald Wehde. He had for many years been engaged in the automobile business dealing with both new cars and used cars. He knew Mr. Woode's car and the question was asked him as to his estimate concerning the value of the car. His answer was "So I would say around $1600 is probably an average fair price for the car if it was in average condition." We find no merit in appellant's contention with reference to the matter of repairs of the car.

II. The second contention as to error urged by appellant is that the trial court admitted and failed to strike the evidence concerning plaintiff Mr. Woode's loss of earnings.

While Mr. Woode did not think he had any serious injuries at the time of the excitement over the wreck of his car, and the conversations which took place immediately thereafter, yet it developed within a very short period of time that he had suffered a serious nerve injury. He was under the care of his doctor for a period of almost two years.

In the ordinary case when a man is injured he loses a certain amount of time from his work. The loss can easily be computed because he can show he was earning a certain amount per day or week. Mr. Woode was in business for himself. He had a body shop and had two men working for him. He discov-

ered immediately after the incident that he was not able to work. He testified when he was working he received from four to five dollars an hour for the work performed by him in the repair of cars. His doctor also testified he was not able to do this work. It became necessary for him, if he was going to continue in and maintain his business, that he hire a man or additional men in his place to take care of the work as it came into his shop. It would perhaps have been easier as to computation if he had testified that during the time between the incident on December 15, 1959, and the day of the commencement of the trial in November of 1962, he lost a certain number of hours or a certain number of working days from his work at the shop. However, this matter does not appear in the record in this form. His counsel presented his matter of loss of earnings by another method.

Mr. Woode's testimony in connection with the matter was:

"Q. Following the date of this accident, Mr. Woode, and up to the present time did you sustain any loss of income? A. Well definitely I did because I had to hire another man, you might say, to take my place.

"Q. And you know about what loss of income you sustained by reason of being unable to perform your duties? A. Well, Sir, I do know this, in 1960, 1959, could I tell you, I know how much I put out for—so actually how much I lost—I put out $5100 in the year of '59, and '60 I put out $7300 in help, and '61 I put out $8000 as I remember."

We have approved this manner of proving earnings where an injured person is in business for himself. Mitchell v. Chicago, R. I. & P. Ry. Co., 138 Iowa 283, 114 N.W. 622; Bascom v. Hoffman, 199 Iowa 941, 945, 203 N.W. 273, 275; 15 Am. Jur., section 91, page 502.

In Bascom v. Hoffman, supra, we said: "We are disposed to hold the rule to be that, whenever the evidence shows that the person is injured, and unable to pursue his ordinary vocation, and employs someone to carry out the work for him, such fact is admissible, and the reasonable amount of wages that he paid the one so employed is also admissible: first, as tending to show the extent of his disability or impairment in the carrying on of

his business, and second, to be taken into consideration in determining the worth and loss of his time."

While plaintiff's evidence as to payment of $2200 more for wages in 1960 and $2900 more for wages in 1961 may have been slightly indefinite, yet we consider the evidence sufficiently definite to satisfy plaintiff's claim. In his petition plaintiff claimed his loss as to employment during the period involved was "exceeding $2000." The trial court instructed the jury that as to this element of damage they were restricted to $2000. On the basis of the record and the instructions of the court we do not consider this assignment of error effective. Also see Shewry v. Heuer, 255 Iowa 147, 157, 158, 121 N.W.2d 529, 535, 536.

III. Appellant claims the court erred in submitting instructions 6, 7, 8 and 9, which instructions refer to proper lookout, control of car, blocking highway, and entering a public highway without stopping.

Plaintiff's petition contained allegations of negligence as to all four elements referred to in instructions 6, 7, 8 and 9.

The record shows Mrs. Kabela started her car some distance from the highway to move through the lane to the highway. There is no evidence in the record showing she saw Mr. Woode's car at the time she left the house. The evidence shows Mr. Woode did see her start on her drive to the highway. She was then hidden, partly because of the contour of the ground and partly because of high weeds and shrubbery, so for a considerable length of time he did not see her. She then appeared a short distance before reaching the highway. At that time and point, according to Mr. Woode's testimony, she seemed to slow the speed of her car. Her slowness was to the extent that Mr. Woode thought she was in the process of stopping her car, as she should, before entering primary roadway No. 1. However, instead of stopping she drove upon the paved roadway and stopped. This placed her immediately in the path of Mr. Woode's car. Her testimony with reference to the matter was as follows:

"At the time Mr. Woode's car was 400 feet away I stopped momentarily and then started on into my own—. The reason I stopped—it was impulse, I suppose you might say. Impulse of what I don't know. I don't know if I realized for sure how far I

was out into the lane of his lane of traffic. The first thing I did was put my foot on the brake. I thought I will have to back up. The thought did enter my mind. I stopped just momentarily. * * * As I started to go forward I wouldn't say I reached a speed of over ten or fifteen miles an hour."

From the above testimony of defendant the jury had a right to consider the matter and could find that she was not keeping a proper lookout. Instruction No. 6 of the court was in order.

Under instruction No. 7 the court instructed on the question of a person having a car under control. What the court said was: "A driver may be said to have his vehicle under control when he has the ability to guide and direct its course of movement, fix the speed, and bring it to a stop with a reasonable degree of celerity." In view of the above quotation from Mrs. Kabela's testimony the court was exercising a reasonable prerogative in giving an instruction with reference to control of her car.

Instruction No. 8 pertained to defendant blocking the highway at a time and place it was lawfully traversed by plaintiff. There is no question from the record but what defendant was there and was stopped. She said so. This occurred in the right lane, which was Mr. Woode's lane and instruction as to the matter was properly given.

In instruction No. 9 the court stated to the jury that the laws of Iowa provide the driver of a vehicle about to enter a highway from a side driveway shall stop the vehicle prior to driving upon the highway.

This provision appears in section 321.321 of the 1962 Code: "The driver of a vehicle shall stop or yield as required by this chapter at the entrance to a through highway. * * *." The giving of this instruction was proper and reasonable (except as amended).

IV. We are at a loss to understand why appellant objects to proof as to the medical expenses incurred by Mr. and Mrs. Woode. They both testified at length as to the physical troubles they were having after this automobile incident. Their doctor testified with reference to all the symptoms and about the suffer-

ing of both plaintiffs. The troubles of both were in the field of an extreme and painful condition of nervousness. Dr. Harold E. O'Neal testified with reference to Mrs. Woode that she called on him on December 17, 1959, which was two days after the accident. She was badly shaken up and had sore muscles and distress in the upper part of her back. Her arms were swollen and tender and there were black and blue areas on the arms. She was tender over the sixth and seventh vertical vertebra and there was some restriction on moving and bending her neck forward. He took an X ray of the cervical spine, but found no fracture. He also sent her to an orthopedic specialist in Cedar Rapids to take cervical spine X ray and report to him. This was after she had suffered nervous and severe pains for over a year, because he did not send her to Doctor Wray in Cedar Rapids until April of 1961. He said "In examining Mrs. Woode I found evidence of true pain and of definite pulling on strained or sprained ligaments." Mrs. Woode testified she was still suffering from the nervous condition and having some pain at the time of the trial, which was almost two years after the automobile incident.

The doctor also testified: "I also had occasion to examine Mearl Woode following this accident. * * * He was badly shaken up and at that time he felt as though he could not swallow normally. He was very nervous and felt that the food didn't go down into the stomach properly. Very irritable at different times I saw him.

"Q. In your opinion did the condition in which you found him, let's say on January 29, was that or could that have been a condition arising out of an automobile accident? A. I would have to say yes, because it is all based on a neurotic condition of man. At that time he felt as though he couldn't properly swallow."

Doctor O'Neal's bill was offered and received in evidence. He testified as to the bill: "I would say that the charges noted thereon were reasonable and usual for that type of thing in this community." The bill constitutes an exhibit and its amount is $457.25. There were also some druggist bills admitted in evidence, making a total medical expense of Mr. Woode of $497.35.

Mrs. Woode's medical expenses amounted to $65.

V. Appellants complain about the court's instruction

with reference to what is called a dormant condition. Mr. Woode was injured in World War II, which resulted in a very serious nervous condition. He was under doctor's care for an extended period of time and received a pension for this condition for about three years after the war. By that time the condition had disappeared and Mr. Woode was completely well. He remained well and worked continuously until the automobile incident involved in the instant case. The incident revived his neurotic condition of years ago. It was proper for the court to instruct with reference to the condition because if the negligent actions of defendant were such that his former poor physical condition was revived or was enhanced he was entitled to damages because of such condition. Hackley v. Robinson (Iowa), 219 N.W. 398, 399; Waterloo Savings Bank v. Waterloo, Cedar Falls & N. R., 244 Iowa 1364, 60 N.W.2d 572, 578; Fredrickson v. Heline, 252 Iowa 92, 106 N.W.2d 74, 76.

■ In the Hackley case we said: "The law is well defined that one who is predisposed to disease which is aggravated or accelerated by negligence is entitled to recover damages necessarily and proximately resulting from such aggravation or acceleration."

VI. Appellants raise the question as to the verdict of the jury being excessive and that it was contrary to law under the pleadings and evidence.

■ A careful examination of the verdict does not sustain this charge. The jury rendered a verdict in favor of Mr. Woode in the amount of $5552.10. It returned a verdict in favor of Mrs. Woode in the amount of $1565.

The court instructed they could not find in favor of Mr. Woode in excess of $2000 as to earnings, because that was the amount shown in his petition. The court also instructed that Mr. Woode's medical bill could not be computed at more than $497.05, and that the cost of repairs of the car could only be computed on the basis of $944.75. This makes a total of $3442.80, leaving $2109.30 for pain and suffering. In view of the record in the case said amount for pain and suffering on the part of Mr. Woode is not in any manner excessive. It is very reasonable and in fact modest.

With reference to Mrs. Woode her medical expenses were $65, and the jury included that in its verdict and found in her favor in the amount of $1500 as to pain and suffering. The record as shown in the testimony of both Mr. and Mrs. Woode and the doctor shows continuous pain and suffering on her part and the amount allowed was not excessive.

 The determination of the amount of the verdict is ordinarily within the sound discretion of the jury. This discretion, however, is not without limit or control. Ordinarily courts will not disturb such verdicts unless they are so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raise a presumption that they are the result of passion or prejudice or other ulterior influence. Elings v. McGrevey, Inc., 243 Iowa 815, 53 N.W.2d 882, 885; Stiefel v. Wandro, 246 Iowa 807, 68 N.W.2d 53, 60; Allbee v. Berry, 254 Iowa 712, 119 N.W.2d 230; Warrender v. McMurrin, 256 Iowa 617, 128 N.W.2d 285.

In this case we should observe that Mr. Woode was very proficient in the maneuvering of his car so that it missed defendant's car. By his expert control of the car and preventing a crash he no doubt saved injury to some of the four children and three adults in the two cars or he may even have saved the possibility of a death.

The judgment of the court based upon the verdict of the jury is affirmed.—Affirmed.

All JUSTICES concur.