Oscar A. Anthes, appellee, v. Fern R. Anthes, appellant.

No. 51793.

(Reported in 139 N.W.2d 201)

DECEMBER 14, 1965.

Lynch, Dallas, Smith & Harmon, of Cedar Rapids, for appellant.

John G. Vernon, of Marion, and Fisher & Pickens, of Cedar Rapids, for appellee.

RAWLINGS, J.—This case has been here before. Upon appeal by plaintiff from judgment on directed verdict for defendant we reversed and remanded. The case was then retried, submitted to a jury, verdict returned for plaintiff in the sum of $37,500, and judgment in that sum entered. Despite defendant's argument to the contrary, we find plaintiff's testimony on the second trial was substantially the same as on the first trial. Nothing would be

gained by here repeating those facts at length. See Anthes v. Anthes, 255 Iowa 497, 122 N.W.2d 255. However, plaintiff did file an amended and substituted petition prior to the second trial, which is, of course, controlling in our consideration of this appeal.

I. By his amended and substituted petition plaintiff alleged he was an invitee upon the property of defendant at time of injury. This is denied by defendant's answer. Evidence was presented by plaintiff supporting his claim, which is not seriously controverted by defendant's testimony. The instructions to the jury were based upon the premise plaintiff was unquestionably an invitee. Defendant never challenged this assumption by any requested instructions or objection to instructions as given.

Upon this record we are committed to the position plaintiff was an invitee at the time and place of his claimed injury. Rules of Civil Procedure 196, Code, 1962, and Hahn v. Graham, 256 Iowa 713, 128 N.W.2d 886. This means plaintiff was upon defendant's premises either by express or implied invitation of defendant on business of material interest to both, or in connection with the business of defendant. Smith v. Cedar Rapids Country Club, 255 Iowa 1199, 1203, 124 N.W.2d 557. The relative rights and duties of plaintiff and defendant are to be determined accordingly.

II. One of our most recent pronouncements in this field was in Anthes v. Anthes, supra, where we said: "The inviter's duty is to use reasonable care to keep the property in a reasonably safe condition for the contemplated use." Then, "It was the defendant's [inviter's] duty to use reasonable care to have his premises reasonably safe for invitee; if not safe it was his duty to remedy the *defect or danger*, or to warn the invitee who in the exercise of reasonable care [would] not know of the *defect or danger*." And, "Defendant [inviter] is not liable for injuries from *dangers* that are obvious, reasonably apparent or as well known to the person injured as they are to defendant." (Emphasis supplied.) See 38 Am. Jur., Negligence, section 97, page 757, and 65 C. J. S., Negligence, sections 49–51, pages 541–548. And in Holmes v. Gross, 250 Iowa 238, 249, 93 N.W.2d 714, we held the duty of an inviter, as above set forth, is a continuing

one. In the case now before us plaintiff entered upon defendant's premises as an invitee, and this he remained at all times concerned.

III. Reduced to the ultimate, defendant challenges: (1) Sufficiency of the evidence to support the pleaded particulars of negligence, and instructions given as to these specifications; (2) adequacy of evidence to support the claim of proximate cause, and of injury and damages to plaintiff; (3) adequacy of the record relative to impairment of earning capacity, and the instruction given; (4) admission of evidence as to custom, and the instruction given; and (5) excessiveness of the verdict.

In the consideration of the claimed errors, we view the evidence in the light most favorable to plaintiff and accord to him the benefit of all permissible inferences.

IV. Plaintiff has asserted a series, or combination, of factors constituting negligence which he claims were the proximate cause of his injuries and damage. These specifications of negligence may be fairly summarized as follows: (a) Failing to install horizontal tunnel sections so the ends overlapped; (b) improperly erecting the vertical tunneling so it rested on the horizontal tunneling rather than on a solid base; (c) using different sized sections in erecting the vertical tunneling; (d) attempting to fasten vertical tunneling in place with binder twine; and (e) failing to properly fasten the top of the vertical tunneling. Plaintiff also claimed negligence in failing to warn him as to each of these alleged acts or omissions.

Although these particulars of negligence as pleaded may have left some things wanting they were sufficient to apprise defendant as to the basis of plaintiff's claims. Plaintiff was entitled to present any competent evidence in support of his specifications of negligence, and to have the court instruct the jury accordingly, subject only to the condition legally sufficient evidence was in fact presented. Rules of Civil Procedure 70, Code, 1962, and Sutton v. Moreland, 214 Iowa 337, 340–342, 242 N.W. 75.

In Anthes v. Anthes, supra, we said an allegation that defendant negligently did a certain act is equivalent to saying defendant owed a duty to exercise reasonable care. The same rule applies, of course, to an omission to do a certain thing which should have been done.

V. We find plaintiff did produce sufficient competent testimony to support his allegations of negligence.

Defendant erroneously assumes the accepted rule of law to be that an inviter is not liable where an existing *condition* is as well known to the invitee as it is to the inviter. This can be and is sometimes only half the story. As we have repeatedly said, the inviter's duty applies only to defects or conditions which are in the nature of dangers, traps, snares, pitfalls, and the like, which are not obvious or known to the invitee, but which are or in the exercise of due care should be known to the possessor. Conditions may be such as to make a danger or peril self-apparent. On the other hand conditions may be such that the danger is latent, concealed or hidden. Corrigan v. Younker Bros., Inc., 252 Iowa 1169, 1175, 110 N.W.2d 246; 38 Am. Jur., Negligence, section 96, page 754, section 102, page 762; and 65 C. J. S., Negligence, section 50, page 541.

In the case now before us plaintiff admittedly saw existing *conditions*. However, he had never had any prior experience with wire mesh cribs, knew nothing about horizontal or vertical mesh tunneling in such cribs, and more specifically knew nothing of the methods employed by defendant in his installation of either the horizontal or vertical tunneling prior to the accident. Furthermore, defendant never advised plaintiff as to the methods he had so employed *or the attendant dangers*. A jury question was clearly presented as to whether plaintiff *saw or should have appreciated the perils or dangers of the conditions* he observed. Warner v. Hansen, 251 Iowa 685, 688, 689, 102 N.W.2d 140. A like question was presented as to whether defendant knew of the alleged perils or dangers, or should have known of them, or should have warned plaintiff. See Corkery v. Greenberg, 253 Iowa 846, 114 N.W.2d 327; Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 106 N.W.2d 579; Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 30 N.W.2d 97; Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 15 N.W.2d 286; 2 Restatement, Torts 2d, section 343, page 215; and 38 Am. Jur., Negligence, section 97, page 757.

VI. By instructions 13 through 17, the court properly advised the jury as to plaintiff's allegations of negligence, (a)

through (e) above. Then by instructions 19 through 22 proceeded to give proper related instructions as to defendant's duty to warn.

In these instructions the court appropriately paraphrased and thus clarified the specifications of negligence asserted by plaintiff. Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 851, 102 N.W.2d 881. In so doing the trial court proceeded to first state properly each separate specification of negligence, then just as properly advised the jury to the effect that if such method of installation or construction was as an ordinarily careful and prudent person would have done, the defendant would not be negligent, otherwise defendant would be negligent. This was followed, in each instance, by a separate instruction which advised the jury relative to defendant's duty to warn.

In that connection instruction 10 informed the jury to the effect defendant would not be liable for injuries from dangers obvious or apparent to plaintiff.

Then by instruction 11 the jury was specifically told there could be no liability unless it be shown by a preponderance of the evidence there was a duty to use care, an omission to perform the duty, and that defendant would not be liable to plaintiff unless probability of harm could reasonably have been foreseen by defendant.

This is followed by instruction 12 which served to tell the jury plaintiff could not recover if he knew or reasonably should have known of any claimed negligence in the construction or installation of the tunneling.

Then instruction 18 told the jury plaintiff could not assert against defendant any claimed element of negligence known to plaintiff or which he should reasonably have known. This was in the nature of a repetitive cautionary instruction which served to further clarify the issue as to known or apparent danger. Defendant has no reasonable cause to challenge instruction 18 which is most favorable to him.

All instructions given should be considered together. Shank v. Wilhite, 256 Iowa 982, 129 N.W.2d 662. When we so consider the instructions given, it becomes evident defendant has no just cause for complaint as to plaintiff's specifications of negligence.

We are satisfied a jury issue was presented as to the elements of negligence asserted by plaintiff, Rules of Civil Procedure 344(f)10, and equally satisfied the court properly instructed the jury in this area.

By the same token we find no error in refusing defendant's requested instruction 7, the subject matter of which was fully and properly covered by the instructions given. Shank v. Wilhite, supra.

VII. The existence of some apparent variances, or inconsistencies in the evidence presented by plaintiff are of no benefit to defendant on this appeal. He apparently alludes to statements on the same subject matter made by plaintiff on the first trial versus those made on the second trial, and to evidence presented by plaintiff and others during the second trial on direct examination as against that presented on cross-examination.

The claimed inconsistencies can well be demonstrated by the following: According to the record, on appeal from the first trial plaintiff did not know how the tunnels in defendant's crib were installed. Then, according to the record on appeal from the second trial, plaintiff saw the horizontal tunnel was crushed just enough to block the sheller drag. Or, on the first trial, there was corn around the vertical tunnel, but on the second trial there was no corn around the vertical tunnel except to the north side or rear of it.

Clearly any such inconsistencies did not obliterate or condemn plaintiff's testimony or that of others of like nature.

We are little concerned with any such variances. Actually, the matter of inconsistencies in the testimony of any witness is ordinarily for the jury to weigh and consider. Kaltenheuser v. Sesker, 255 Iowa 110, 116, 121 N.W.2d 672; Tobin v. Van Orsdol, 241 Iowa 1331, 1334, 45 N.W.2d 239; Jettre v. Healy, 245 Iowa 294, 297, 60 N.W.2d 541; Hess v. Dicks, 192 Iowa 378, 382, 184 N.W. 742; and Law v. Hemmingsen, 247 Iowa 855, 861, 76 N.W.2d 783.

Furthermore, the claimed variances or inconsistencies in plaintiff's testimony or that of other witnesses never attained the stature of judicial admissions. See Silvia v. Pennock, 253 Iowa

779, 786, 113 N.W.2d 749; Carter v. Chicago, R. I. & P. R. Co., 247 Iowa 429, 436, 74 N.W.2d 356; and Snittjer Grain Co. v. Koch, 246 Iowa 1118, 1124, 71 N.W.2d 29.

By instruction 32 the court advised the jury as to the effect of out-of-court statements, and contradictory testimony. An examination of the claimed variances makes doubtful the necessity of having given this instruction. French v. Universal C. I. T. Credit Corporation, 254 Iowa 1044, 1048, 120 N.W.2d 476. Since it was given, any questionable weight attached to defendant's claim of error was most certainly reduced to no weight at all.

VIII. Defendant takes exception to the giving of instruction 41 concerning impairment of future earning capacity. Associated with this is the objection raised as to competency and sufficiency of evidence to support any such element of damage.

By the challenged instruction the jury was told plaintiff had the burden of proving by a preponderance of the evidence the extent, *if at all*, to which his future earning capacity had been impaired as a direct result of injuries received. Continuing, the court admonished the jury, in the same instruction: "In the absence of such evidence, you would not be warranted in awarding plaintiff damages in any amount for future loss of earnings or impairment of earning capacity in the future." Defendant challenges failure on the part of the trial court to instruct that any allowance for future loss of earning capacity must be limited to *such damages as were reasonably certain to be caused by the injury.*

In Grant v. Thomas, 254 Iowa 581, 585, 118 N.W.2d 545, we held loss of earning capacity is an element of permanent injury. We also there held it is for the jury to determine the sum necessary to compensate plaintiff, if at all, by awarding the present value of future earning capacity to the extent it was impaired, according to the testimony. Then in Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 722, 107 N.W.2d 85, we said: "We have held impairment of physical capacity in itself may be presumed to impair the general earning capacity of the person injured."

There is no fixed rule for the determination of damages for impairment of future earning ability. It cannot be fixed

within any prescribed field of certainty and must, of necessity, be left to the sound discretion of the jury. 22 Am. Jur.2d, Damages, section 93, page 136.

The right to damages for impairment of earning capacity may otherwise be classified as impairment of ability to work and earn. It is determinable by the difference between the value of an individual's services, if working, as he would have been but for the injury, and the value of the services of an injured person, if working, in the future. 22 Am. Jur.2d, Damages, section 92, page 134. It is based upon capacity to earn, not on earnings alone.

A person may not have worked or may have had no income prior to trial, but still suffer impairment of future earning capacity. Shover v. Iowa Lutheran Hospital, supra, and 22 Am. Jur.2d, Damages, section 100, page 147.

Impairment of physical capacity creates an inference of lessened earning ability in the future. Medical testimony is, of course, admissible in support of this element of damage but not always essential. The basic element to be determined in the matter of claimed impairment of future earning capacity is the reduction in value of the power to earn, not the difference in earnings received before and after the injury. 22 Am. Jur.2d, Damages, section 94, page 137.

In considering impairment of earning capacity we are dealing with after injury decreased earning potentiality. This must be determined not alone by earnings before and after, nor by expenditures before and after injury. These are simply elements of proof to aid the jury, if at all, in determining impairment of ability to earn. Actually there may be an allowance of damages for impairment of earning capacity even in the absence of evidence of earnings lost or expenditures made for substitute labor. In fact, a person may have permanent disability but at the same time suffer no loss of earning power. Jurgens v. Davenport, R. I. & N.W. Ry. Co., 249 Iowa 711, 718, 88 N.W.2d 797, and 25 C. J. S., Damages, section 87, page 951.

IX. Of course, an instruction must have support in the testimony. We turn then to the evidence presented in connection with plaintiff's claimed impairment of future earning

capacity. He graduated from high school, worked in a service station, then went into farming in partnership with his father. Prior to the accident he bought the father's interest. He was a good, able-bodied, hardworking farmer, single and 36 years old at time of trial. The life expectancy of a person of 36 is 35.78 years.

He presented detailed evidence relative to his operations as a grain farmer and in the buying, feeding and selling of pigs and calves. He had farm equipment with which to carry on his operations. His work was such as to require shoveling, hauling, and in general hard work. However, he offered no direct testimony as to specific earnings or losses prior to or after the injury.

He was hospitalized in October and December 1960, then in February, April and May 1961. A spinal fusion operation was performed in December 1960. His injuries caused him much pain and suffering and this continued up to time of trial. He had to discontinue some of his heavy work, sold some cattle and machinery, and hired help in connection with his farming operations. He testified as to payments made for some labor to help out. This was permissible. Woode v. Kabela, 256 Iowa 622, 128 N.W.2d 241. And we have held the fact of payment alone is sufficient to carry the issue of reasonableness to the jury. Lawson v. Fordyce, 237 Iowa 28, 50, 21 N.W.2d 69.

There was testimony plaintiff's injuries were painful and had caused him some personality changes. Doctors stated his injuries were serious, and he needed another operation, referred to as a laminectomy, the estimated cost of which would be about $1200. The medical witnesses also estimated the period of time plaintiff would be incapacitated in event of further surgery. They also said plaintiff's injuries would result in some permanent disability.

A feed salesman with previous farm experience over a ten-year period, conversant with farming operations in the territory concerned, testified farm help in 1959 was worth $250 a month, or $1.25 to $1.50 per hour.

Plaintiff returned to his farming operations after the accident, but was unable to do the work he had done before, or to do it as well. His capabilities as a farmer had been restricted. He

could not operate a tractor as before, could not shovel, or do heavy lifting, and suffered pain in connection with any hard labor. These are all factors which would affect the earning capabilities of plaintiff who sought his living from hard physical labor.

In Sexton v. Lauman, 244 Iowa 570, 57 N.W.2d 200, 37 A. L. R.2d 353, plaintiff was in the trucking business and had hired extra help at all times. In presenting testimony as to hired help after the injury, plaintiff presented no evidence whatsoever disclosing the extra help had been then hired by reason of the injury. This court there held plaintiff had failed to prove the after injury help had been hired to do work plaintiff would have done but for his injury.

In the case at hand plaintiff's testimony discloses he had hired no extra help on the farm prior to his injury and the help had been secured because he could not do the work as he had done it before. We find Sexton is readily distinguishable.

In Harms v. Ridgeway, 245 Iowa 810, 64 N.W.2d 286, a Nebraska farmer seeking damages for impairment of future earning capacity was held not entitled to recover upon the evidence presented. His testimony was to the effect he was a tenant on a 400-acre farm, raised grain and stock, and did some livestock scalping. He neither demonstrated his earning capacity, his ability to operate a farm, nor his ability as a farmer. He did not even present any testimony as to wages paid extra hired hands. In the case before us there was testimony presented as to the value of farmhands in 1959, the year of the accident. Plaintiff also told in some detail about his investments, the livestock he had purchased before injury, and because of inability to do the necessary work after the accident, having sold most of his livestock at a loss.

We dealt with just such a situation as that now before us in Shewry v. Heuer, 255 Iowa 147, 121 N.W.2d 529. There the plaintiff, a partner with his son in fabricating and welding metal, was injured, brought action for damages, and asked compensation for loss of earnings. His testimony, as in the case now before us, disclosed, in general, time lost from business. Evidence as to some prior business gains and profits was offered but not admit-

ted. Testimony was presented as to hourly wages paid welders employed by plaintiff. We there said a finding would be justified that the value of plaintiff's time to his business was at least as much as that of an employee who was able to do only part of the work plaintiff was able to do before the accident.

Plaintiff said he hired no farm help during the three years prior to injury. His testimony then discloses he paid for farm help in 1960, $1580; in 1961, $2400; in 1962, $845.79; and in 1963 the sum of $960.

By instruction 40 the court specifically advised the jury the plaintiff's expenses in 1960-1963 were not to be included in damages, if any, which might be awarded.

Instruction 42 served to tell the jury if plaintiff's injuries were found to be such as would to some extent disable him in the future, "* * * you should determine and allow such further sum as paid now in advance will fairly and reasonably compensate as the evidence shows * * * with reasonable certainty." It went on to caution against passion, prejudice or sympathy in arriving at the verdict.

In support of the foregoing see also Amelsburg v. Lunning, 234 Iowa 852, 14 N.W.2d 680.

The instructions given were proper, did serve to impose upon plaintiff the burden of proving his claim with reasonable certainty, and we find no merit in defendant's complaint.

X. Defendant also maintains there was error in overruling his exception to instruction 31 which relates to custom and usual or accepted practice in erecting corncrib tunneling.

The testimony in this area was presented by one witness, a farmer and custom corn sheller, and another witness, a farm equipment retailer. Their evidence was to the effect a failure to comply with customary standards of construction of the tunneling would make the tunnels unstable, wobbly, weak and unsafe.

The customary methods of installing tunneling included the "dovetailing" or "lapping" of horizontal tunnel sections, the placing of vertical tunnels upon the floor or some stable base, not upon the horizontal tunnel, and excluded the use of binder twine either as a tunnel connector or stabilizer.

We find no error on the part of the trial court in admitting this evidence as to custom and usage. Tilghman v. Chicago & N.W. Ry. Co., 253 Iowa 1339, 1353, 115 N.W.2d 165.

By instruction 3 the court properly placed the burden upon plaintiff to prove negligence on the part of defendant in one or more of the particulars of negligence asserted, by a preponderance of the evidence. Instruction 4, and others, stated plaintiff must prove the negligence alleged was a proximate cause of plaintiff's injury and damage. Instruction 5 defined "ordinary care" and "negligence". By instruction 6 the court properly covered the matter of contributory negligence. Then instructions 10 and 11 applied the matter of negligence to the relative status of an invitee and inviter.

By instruction 31, the court told the jury evidence of custom or usage, or accepted practice of a trade or business, may be shown as it bears upon the issue of negligence of defendant. It also instructed the jury that nonconformance by defendant may be considered by the jury as evidence of negligence. This challenged instruction did *not* say failure to comply with custom, ordinary usage or accepted practice constituted negligence per se. In fact the instruction given provided in part as follows: "Evidence as to customary conduct or standard methods does not provide a conclusive test of negligence. Such evidence may, however, be considered by you, together with all the other facts and circumstances established by the evidence, in determining whether the defendant was negligent by reason of the failure to exercise ordinary care under the circumstances." The evidence justified the instruction which, as given, was proper. See McCrady v. Sino, 254 Iowa 856, 861, 118 N.W.2d 592; Wood v. Tri-States Theater Corp., 237 Iowa 799, 807, 23 N.W.2d 843; Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 1386, 15 N.W.2d 286; and Hamilton v. Chicago, B. & Q. Ry. Co., 145 Iowa 431, 436, 124 N.W. 363.

Finding no basis for defendant's complaint as to instruction 31, we also conclude there was no error in refusing defendant's requested instruction 13 relative to custom, usage and practice. Shank v. Wilhite, supra.

XI. Proximate cause is another element of the case which is challenged by defendant.

The evidence discloses plaintiff was an able-bodied person prior to the accident. On the day in question he entered defendant's corncrib, and helped shovel corn until it was discovered the horizontal tunnel was crushed so the sheller drag would not move farther into the base of the crib.

As plaintiff lifted on the crushed horizontal tunnel section he was stooped or bent over. The heavy vertical tunnel then fell and struck plaintiff in the back. He felt terrific pain. It hurt him where he had been hit. He knew metal had struck him. He was knocked down. When found by his father, plaintiff was on his hands and knees and said he thought his back was broken.

Two medical witnesses expressed opinion as to the cause of plaintiff's injury. One said it was caused by the falling tunnel. The other said there was a very excellent probability that in plaintiff's bent position the blow from behind could produce a disc herniation. On cross-examination he said it was in the realm of possibility, being impossible to prove. Just such a situation was presented in Kaltenheuser v. Sesker, supra, where at page 117 of 255 Iowa, page 676 of 121 N.W.2d, we said:

"The defendants think this cross-examination destroyed the doctor's direct testimony that the ulcer was probably caused by the accident. We do not so understand it. The question asked on cross-examination dealt in possibilities, and it is understandable that the doctor could not say positively, beyond any question of proof, that the condition resulted from the accident. We doubt that medical science has yet advanced to that extent in the matter of definite causation of ulcers. We think the doctor's direct testimony, weakened perhaps by the cross-examination, was still for the jury to weigh."

See also Rules of Civil Procedure 344(f)10, Code, 1962; McClenahan v. Des Moines Transit Co., 257 Iowa 293, 132 N.W. 2d 471; and Webber v. E. K. Larimer Hardware Company, supra.

The matter of proximate cause was properly submitted for determination by the jury.

XII. The jury returned a verdict for plaintiff in the

sum of $37,500 and defendant says this is excessive. We admit it may be more than we, sitting in the position of the jury, would have allowed. This though is not controlling. The factual situation has already been fully set forth. Briefly, plaintiff endured severe pain, incurred medical and hospital expenses in the total sum of $1296.95, and a recommended future operation will cost an additional $1200. He was forced to curtail his farming operations, and sold livestock at a loss. His injuries are of a permanent nature. At time of trial he could not do the hard work normally attendant upon the operation of a farm, which was his means of earning a living, and had paid out substantial sums for hired help.

We have said a comparison of verdicts in different cases involving personal injuries is seldom helpful. Waterloo Savings Bank v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1376, 60 N.W.2d 572. To the extent any comparisons may be helpful, see annotations: 16 A. L. R.2d 3 and 16 A. L. R.2d 372.

It is not for us to invade the province of the jury and we will not alter a verdict unless it is so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raises a presumption it is the result of passion, prejudice, or other ulterior motive, or is lacking in evidential support. Woode v. Kabela, 256 Iowa 622, 633, 128 N.W.2d 241, 247, and Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W. 2d 85, 92. And in weighing verdicts we have also recognized the diminished purchasing power of the dollar. Brophy v. Iowa-Illinois Gas and Electric Co., 254 Iowa 895, 899, 119 N.W.2d 865.

The jury returned the verdict, the trial court deemed it reasonable and fair, and we find no good or compelling cause to alter or modify it now.

We are satisfied there was no error on the part of the trial court in overruling defendant's motion for judgment notwithstanding the verdict, and defendant's motion in the alternative for a new trial.—Affirmed.

CHIEF JUSTICE GARFIELD and JUSTICES LARSON, THORNTON, SNELL, MOORE, MASON and BECKER concur.